Filed 1/14/15  P. v. Johnson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C074184 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F05954) |
| v. | |
| MAURICE JOHNSON, | |
| Defendant and Appellant. | |

Convicted by a jury of first degree burglary (Pen. Code, § 459)[1] and found by the trial court to have incurred one strike and served two prior prison terms (§§ 667, subds. (b)-(i), 667.5, subd. (b)), defendant Maurice Johnson contends the trial court committed structural error and denied him due process by refusing to allow him to testify.  We conclude any error was harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705] (*Chapman*).)  We affirm.

---

[1]     Undesignated section references are to the Penal Code.

1

FACTS

Shortly after 12:00 noon on August 16, 2012, a security guard at the Carmel Pointe Apartments in Sacramento noticed that apartment number 119, occupied by Rahendra Lal, had a broken kitchen window. Lal had left for work that morning around 6:00.

The security guard notified Kira Robinson, the complex's assistant property manager, who went to apartment number 119 and saw that the window was broken and the door was slightly ajar. After determining that Lal was not home, Robinson entered. No one was there, but the shower was running, there were window blinds in the bathtub, and there was blood on the shower fixture. Robinson left without touching anything and called the police. In addition to the blood on the shower fixture, the responding officers found blood in the kitchen. Around 1:00 p.m., Robinson called Lal to tell him about the burglary.

According to Robinson, defendant was not an employee of the apartment complex and had never been a tenant there.

A surveillance camera video[2] showed that around 11:39 a.m. on August 16, 2012, a person who appeared to be a light-skinned African-American male, standing five feet seven inches to five feet 10 inches tall and weighing 150 to 160 pounds, wearing blue jeans, a hat, and a white T-shirt, entered the apartment complex through the front gate.[3] At 12:19 p.m., the man walked out of the complex carrying a backpack and rolling what

---

[2]     The video was not preserved for trial, but Lal, Robinson, and Officer Paula Gow of the Sacramento Police Department viewed it and testified about its contents.

[3]     When defendant was arrested approximately two weeks after the burglary, the officer who detained defendant estimated defendant to be five feet eight inches tall and weighing 160 pounds.

appeared to be Lal's suitcase. He was shirtless and appeared to have wrapped a shirt around his right hand or arm.

Lal discovered a good deal of clothing, his gold-colored Bulova watch, which had a rectangular face rimmed with fake diamonds, a suitcase, and a backpack were missing.

Else Jibbwa, who lived directly below Lal's apartment, heard glass break and fall to the ground around noon on August 16, 2012. Looking out of her kitchen window, she saw a "short and kind of chubby" man holding two shopping bags walk down the stairs. At trial, she estimated his height as less than five feet four inches and his weight as 170 pounds. When interviewed by Officer Gow on the day of the burglary, however, she said the man was five feet five inches to five feet seven inches tall.

A crime scene investigator lifted a partial latent palm print from a piece of broken glass in the kitchen sink of Lal's apartment. Forensic investigator Timothy Sardelich, testifying as an expert on print identification, analyzed the latent palm print, comparing it to a print obtained from defendant after his arrest and to prints of defendant from the Department of Justice database. Sardelich concluded that the latent print, which was a "10 out of 10" for clarity and quality, matched defendant's known prints.

On August 31, 2012, defendant was detained. On the same date, officers obtained defendant's cell phone. The phone contained photographs of a gold-colored watch. When Lal was shown these photographs he told the police that the watch in the photographs looked like his watch. He testified to the same effect at trial.

Defendant did not put on any evidence.

DISCUSSION

Defendant contends the trial court refused to let him testify and, therefore, reversibly erred. We disagree.

*Background*

Before trial, the trial court ruled that if defendant testified, the prosecutor could impeach him with two felonies and a misdemeanor evincing moral turpitude.

3

After the People rested, the trial court asked defense counsel whether defendant intended to testify. Counsel said defendant had decided not to do so. The court then asked defendant personally whether that was his decision. He said it was and he had had enough time to talk to counsel about it.

During the jury instructions conference, the prosecutor asked the trial court to give CALCRIM No. 376 (possession of recently stolen property as evidence of a crime).[4] Defense counsel objected: "[T]his case doesn't show that [defendant] was in possession of items that were stolen. He was in possession of a phone that had a photograph of a watch." The trial court said the evidence did not carry great weight, but it was sufficient to support the instruction.

After a recess, defense counsel stated: "[T]he introduction of 376 changes the strategy of my case. I previously advised [defendant] not to testify based on the instructions that were submitted by [the prosecutor]. Not seeing 376 in that instruction [*sic*], that was not part of my presentation. [¶] I may want to present evidence now from [defendant] as it relates to the photograph that appeared on his cell phone."

---

**4** CALCRIM No. 376, as given, stated: "If you conclude that the defendant knew he possessed property and you conclude that the property had in fact been recently stolen, you may not convict the defendant of burglary based on those facts alone. However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed burglary.

"The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of burglary.

"Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt."

4

The prosecutor called it "surprising" the instruction would change the defense strategy, since the purpose of the cell phone evidence was clear all along.

Defense counsel replied: "It should not be surprising, Your Honor, when you're doing a cost-risk balancing or analysis. If [defendant] were to testify as it relates to the photo of the watch, the benefit that that would bring is far outweighed by the fact that he could be impeached by his prior convictions with this instruction given, and I think it is confusing. It would confuse the jurors."

The prosecutor offered to "short-circuit this" by withdrawing the instruction. But the trial court stated:

"No, I don't think you need to short-circuit it, as I think it's a specious argument in that you [defense counsel] rested before you knew what the final form of the jury instructions would be, as is common. [¶] So you made a decision to rest, or we had not gone through jury instructions. If it was that key, then you would have -- I would assume asked to go through jury instructions before you made a decision to rest. So that particular argument doesn't hold any weight."

Defense counsel stated: "[Defendant] has indicated to me at counsel table that he wishes to testify. That's why I brought it up."

The trial court ruled: "I understand that, but we have gone through that. I asked [defendant] if he had enough time to speak with you about his decision about whether or not to testify, and he said that he did not wish to testify, and you have rested.

"So you're here with the jury in the hallway, and I'm just going to make a decision about the instructions. We're not going to reopen evidence in the case."

The trial court confirmed it would give the requested instruction and, thereafter, did so.

*Analysis*

It is within the trial court's discretion whether to grant a defense motion to reopen the evidence. (*People v. Jones* (2003) 30 Cal.4th 1084, 1110 (*Jones*); *People v. Funes*

5

(1994) 23 Cal.App.4th 1506, 1520 (*Funes*).)  This rule applies to motions to reopen in order to put on the defendant's testimony.  (*People v. Earley* (2004) 122 Cal.App.4th 542, 546; see *People v. Evans* (2008) 44 Cal.4th 590, 600 [citing *Earley* with approval].)

In determining whether the trial court abused its discretion by denying a defense motion to reopen, the reviewing court considers:  " '(1) the stage the proceedings had reached when the motion was made; (2) the defendant's diligence (or lack thereof) in presenting the new evidence; (3) the prospect that the jury would accord the new evidence undue emphasis; and (4) the significance of the evidence.' [Citation.]"  (*Jones, supra*, 30 Cal.4th at p. 1110.)  Taken together, these factors do not show an abuse of discretion here.

Defendant's motion was made shortly after the closing of evidence, which counts in favor of granting the motion.  (*Jones, supra*, 30 Cal.4th at pp. 1110-1111; compare *Funes, supra*, 23 Cal.App.4th at p. 1520 [motion made after jury had begun deliberating].)  However, the other three factors either count against granting the motion or are impossible to assess on this record.  It does not appear defendant had any new evidence that could not have been presented in the normal course of the evidence; thus, the diligence factor counts against him.  (So far as defense counsel claimed the newly proposed jury instruction changed the calculus about whether defendant should testify, we agree with the trial court that the claim was specious.  Whatever instructions the court gave, the prosecutor was obviously going to cite the cell phone evidence to prove defendant stole the victim's watch.)  Lastly, the significance of defendant's proposed evidence, and the emphasis the jury might accord it, cannot be known because defendant did not make any offer of proof as to what testimony he would give.

Beyond the foregoing analysis, defendant doesn't come to grips with the fact instructions are commonly dealt with by court and counsel after the parties rest for the obvious reason, until then, as the trial court implied, the nature and scope of the evidence

6

is merely tentative. In any event, taking everything into account, we conclude the trial court did not err.

Even if we were to assume error, reversal is not required. The parties agree, under California law, the *Chapman* standard for reversible error applies to this issue. (*People v. Allen* (2008) 44 Cal.4th 843, 870-871.) Defendant asserts *Allen* was wrongly decided and the erroneous denial of a defendant's right to testify should be deemed structural error, reversible per se. (See *Arizona v. Fulminante* (1991) 499 U.S. 279, 307-308 [113 L.Ed.2d 302, 329-330].) He acknowledges, however, this court is bound by *Allen*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Applying the *Chapman* standard, we find, even if the trial court erred by refusing to let defendant testify, the error was not prejudicial and is not, therefore, reversible because the circumstantial case against defendant, without consideration of the cell phone evidence and the related instruction, was overwhelming. A person who fit his description was seen on a surveillance video walking empty-handed toward the victim's apartment, in a building where defendant did not live or work, shortly before the burglary; the same person was seen walking away from the apartment shortly after the burglary, toting the victim's suitcase and backpack.[5] The burglar bled on the premises after breaking a kitchen window to get in; the person in the surveillance video, when leaving the scene, had his shirt off and wrapped around one hand or arm as if to stanch the flow of blood. Lastly, the palm print on a piece of broken glass in the kitchen sink of the burglary victim's apartment matched defendant's known prints. Thus, even if defendant had managed to explain away the photographs on his cell phone -- the only topic on which he

---

[5] Given that Lal, Robinson, and Officer Gow agreed on the suspect's appearance after watching the video and that eyewitness Jibbwa gave the police a contemporaneous description of the suspect that matched defendant, Jibbwa's differing testimony at trial counted for relatively little.

7

proposed to testify -- it would have done nothing to rebut all the other evidence implicating him.[6]

Furthermore, as defense counsel acknowledged, if defendant testified he would have been impeached with three crimes evincing moral turpitude. Added to the weight of the circumstantial evidence against defendant, this impeachment would have undermined his credibility even as to the cell phone evidence.

In short, the trial court did not err, but even if we assume it did, any possible error in denying defendant's tardy request to testify, after both sides concluded their presentation of evidence and rested, was harmless beyond a reasonable doubt.

### DISPOSITION

The judgment is affirmed.

      NICHOLSON      , Acting P. J.

We concur:

      BUTZ      , J.

      MURRAY      , J.

---

[6] Defendant claimed he wanted to testify, but made no offer of proof. Thus, the trial court had nothing against which to assess his claim. Nor do we.

8