Filed 2/2/16  P. v. Martinez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant.<br><br>v.<br><br>RAUL MARTINEZ,<br><br>    Defendant and Respondent. | 2d Crim. No. B264187<br>(Super. Ct. No. 2013023768)<br>(Ventura County) |

Raul Martinez appeals his conviction by jury of first degree residential burglary (Pen. Code, §§ 459, subd. (a); 460) and possession of a smoking device (Health & Saf. Code, § 11364.1, subd. (a).)  He was sentenced to the middle term of four years in prison on the burglary conviction, plus a concurrent term of 90 days on the possession offense.  He was awarded 761 days of custody credit, calculated as 381 days in actual custody plus 380 days of good conduct credit.

Over appellant's objection, the trial court ruled that evidence of appellant's prior uncharged similar acts was admissible to show identity and common plan for the charged burglary.  Appellant contends this was an abuse of discretion because the uncharged burglaries were not sufficiently similar to the charged offense.  We disagree and affirm.

FACTS

A. *Charged Burglary Offense*

On June 29, 2013, Sergio Saldana left his house in Port Hueneme at approximately 8:10 p.m. He returned home 15 minutes later. As Saldana opened his garage door, he saw a man run out of the side door. He did not see the man's face. Saldana noticed two boxes of perfume were missing from the garage. When Saldana's son, who had been in the home, entered the garage, he heard a cellular phone ringing from a backpack he did not recognize as belonging to anyone in the house. Saldana took the backpack to the Port Hueneme Police Department. Officers searched the backpack and discovered a cellular phone, a wallet containing appellant's identification card, paperwork with appellant's name on it and a used methamphetamine pipe. During an interview with Officer Rocque Lopez, appellant was unable to explain why his backpack was found in Saldana's garage. He said he did not remember what had happened to the backpack and did not claim it was stolen.

B. *Appellant's Prior Uncharged Acts*

Around 12:30 a.m. on December 29, 2012, a person entered Concepcion Fontillas' residence in Port Hueneme without her permission, took champagne and beer from the kitchen and left the storage area in disarray. Fontillas heard a noise which awakened her, but she ignored it and went back to sleep. Later that morning, Fontillas' son discovered that their home had been broken into during the night. The back door was unlocked and partially open.

At 12:50 a.m. that same day, Officer Hamrick stopped appellant on the street approximately seven houses north of Fontillas' home. Appellant appeared intoxicated. Officer Hamrick saw a champagne bottle in appellant's pocket, as well as beer and other small items in shopping bags that appellant was carrying. When the officer learned of the burglary, he showed Fontillas the items found in appellant's possession. Fontillas identified the items as those missing from her home.

At 2:00 a.m. on April 15, 2012, Norma Magallanes was sleeping on the sofa at her residence in Port Hueneme when appellant entered through the back door.

2

Appellant went through her personal belongings and put something inside his jacket. He then went down the hall, entered a room and turned on the light. Magallanes saw his face and asked him who he was and what he was doing in her house. Appellant responded, "'They sent me here,'" and then ran outside as Magallanes began to scream. Magallanes called the police.

After the police left, appellant returned to Magallanes' house and attempted to re-enter her home. Magallanes again called the police, who found appellant walking down the street and detained him. Magallanes identified appellant as the intruder.

DISCUSSION

Appellant contends the trial court abused its discretion by permitting evidence of the two prior uncharged burglary acts because they are not sufficiently similar to the charged offense. We disagree.

Evidence Code section 1101[1] prohibits the admission of evidence of a defendant's prior uncharged misconduct to show he committed the current offense, but it allows such evidence to show, among other things, the defendant's identity or plan, or the defendant's state of mind, such as motive, knowledge, or intent. (§ 1101, subds. (a), (b).) Admissibility for these limited purposes depends on the similarity between the charged and uncharged conduct, and each purpose requires a different degree of similarity. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 401-402 (*Ewoldt*), superseded by statute on other grounds as stated in *People v. Britt* (2002) 104 Cal.App.4th 500, 505; *People v. Hendrix* (2013) 214 Cal.App.4th 216, 238.) Here, the trial court found the uncharged acts were relevant to the issues of identity and common plan.

Evidence admissible to prove intent must only support the inference that the defendant probably possessed the same intent in each instance. (*Ewoldt*, *supra*, 7 Cal.4th at p. 402.) When the prosecution wants to prove a common design or plan, a "greater degree of similarity" must exist. (*Id.* at p. 402.) In "establishing a common design or plan, evidence of uncharged misconduct must demonstrate 'not merely a

_____

[1] All statutory references are to the Evidence Code unless otherwise stated.

3

similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.' [Citation.] '[T]he difference between requiring similarity, for acts negativing innocent intent, and requiring common features indicating common design, for acts showing design, is a difference of degree rather than of kind; for to be similar involves having common features, and to have common features is merely to have a high degree of similarity.' [Citation.]" (*Id.* at pp. 402-403; *People v. Earley* (2004) 122 Cal.App.4th 542, 548.)

"The greatest degree of similarity is required for evidence of uncharged misconduct to be relevant to prove identity. For identity to be established, the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts. [Citation.] 'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.' [Citation.]" (*Ewoldt, supra*, 7 Cal.4th at p. 403.)

Contrary to appellant's argument, we conclude that the two prior burglaries share features in common sufficient to support the inference that appellant committed the instant burglary and operated according to a common plan. First, the uncharged burglaries and the charged burglary all involved residences in Port Hueneme, within a half-mile radius, and within a 15-month period between 2012 and 2013. The burglaries were all committed at night, without forced entry into the homes, and without regard for whether the home was occupied. In each incident, appellant took low-value items, such as perfume, alcohol, sundries and hats. (See *People v. Miller* (1990) 50 Cal.3d 954, 989 [geographically proximate acts that share common features with the charged act increase the likelihood that the acts are related].)

We reject appellant's argument that the burglaries are dissimilar because they occurred at different times and do not indicate a pattern of conduct. The crimes do not need to be identical. (*People v. Jones* (2013) 57 Cal.4th 899, 931 [to be "'highly distinctive'" for purposes of proving identity, "'the charged and uncharged crimes need not be mirror images of each other'"]; *People v. Cart*er (2005) 36 Cal.4th 1114, 1149

4

[common features with charged conduct should indicate "'a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual'"].)

*Ewoldt* is particularly instructive because the Supreme Court determined uncharged acts of a defendant sexually abusing his stepdaughters sufficiently similar to the charged act to be admissible as a common plan, although not sufficiently similar to constitute a signature. (*Ewoldt, supra,* 7 Cal.4th at p. 403.) Unlike evidence of uncharged acts used to prove identity, evidence of a common plan "need only exist to support the inference that the defendant employed that plan in committing the charged offense. [Citation.]" (*People v. Earley, supra,* 122 Cal.App.4th at p. 548.) Here, at a minimum, the prior burglaries and the current offense demonstrate appellant's common plan or scheme to enter unlocked, occupied homes at night, within a targeted area of Port Hueneme, for the purpose of stealing items of low value. Appellant's reliance on *People v. Alcala* (1984) 36 Cal.3d 604 is misplaced because "the sites of [the] offenses [in that case] were widely scattered and dissimilar." (*Id.* at p. 632.)

We also conclude that the probative value of the two prior burglaries was not substantially outweighed by the risk of unfair prejudice under section 352. The evidence's probative value was significant because it corroborated the circumstantial evidence of appellant's identity by showing appellant's common plan to steal low-value items from unlocked, occupied residences in an area of Port Hueneme. Based on this evidence, a reasonable juror could find that it was not sheer coincidence that appellant's backpack was found in a garage near homes he had burglarized in the past. The jury was instructed to consider the evidence solely for the purpose of determining whether appellant committed the burglary in this case and whether he had a common plan or scheme to commit the burglary. Accordingly, the trial court properly exercised its discretion in admitting the evidence.

Finally, even if the trial court did err in admitting the evidence of the prior uncharged acts, the error was harmless. Appellant's backpack was found in Saldana's garage shortly after Saldana observed a man fleeing through the side door. The backpack contained appellant's wallet and identification, his personal cellular phone, paperwork

5

with his name on it and his methamphetamine pipe. Although appellant speculates that the backpack was stolen, Officer Lopez testified that when he questioned appellant about the backpack after the incident, appellant did not report it stolen. Instead, he stated he could not recall what had happened to it. Given the physical evidence placing appellant at the scene of the charged burglary, it is not reasonably probable that the jury would have reached a different conclusion without evidence of the uncharged prior acts.

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

6

David R. Worley, Judge

Superior Court County of Ventura
_____

California Appellate Project, Jonathan B. Steiner and Earl E. Conaway, III, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Timothy M. Weiner, Deputy Attorney General, for Plaintiff and Respondent.