Filed 6/6/24  P. v. Avalos CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAVID ALEX AVALOS,<br><br>    Defendant and Appellant. | G062032<br><br>(Super. Ct. No. 20HF0778)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Scott A. Steiner, Judge.  Affirmed.

Charles Thomas Anderson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Donald W. Ostertag and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant David Alex Avalos was charged with two crimes after he was allegedly seen driving a stolen vehicle. At trial, he waived his right to testify after the prosecution rested its case. But, following the prosecution's closing argument, he changed his mind and moved to reopen the evidence so he could testify. The trial court denied the motion, and the jury later found Avalos guilty of one of the crimes. Avalos appeals, arguing the court abused its discretion by denying his motion to reopen the evidence. We disagree. The court acted within its discretion because the evidence Avalos sought to introduce was indisputably available during trial. Thus, the judgment is affirmed.

I

FACTS AND PROCEDURAL HISTORY

*A. The Charges and Trial*

In October 2022, the prosecution filed an amended information charging Avalos with two counts: (1) unlawfully taking a vehicle by a person with a prior felony conviction (Pen. Code § 666.5, subd. (a)[1]; Veh. Code, § 10851, subd. (a)); and (2) receiving a stolen vehicle by a person with a prior felony conviction (§§ 496d, subd. (a), 666.5, subd. (a)). The information also alleged Avalos had a prior strike (§§ 667, subds. (d) & (e)(1), 1170.12, subds. (b) & (c)(1)).

The evidence presented at Avalos' trial is largely undisputed. The prosecution called two witnesses: the victim and the officer who arrested Avalos. Avalos called no witnesses.

The evidence shows that in December 2019, the victim discovered her 2008 black Toyota Corolla was missing from her apartment building's parking lot. She reported the car stolen to the police.

---

[1] All further undesignated statutory references are to the Penal Code.

2

A few days after the victim reported the car stolen, an Irvine police officer noticed a black Toyota Corolla while patrolling a public storage facility. The officer ran the car's license plate and learned it was for a 2012 Toyota. The officer followed the Corolla from behind through the public storage facility. The officer identified Avalos as the person driving the car. The Corolla was eventually parked near some storage units, and three persons exited the vehicle.

Footage from the officer's dash cam was played for the jury at trial. The video is only 39 seconds long. In the first five seconds, a black Toyota Corolla is visible. It then makes a left turn behind a building and is out of sight for about 25 seconds. At the 30-second mark of the video, the black Corolla comes back into view. A woman and man have already exited the vehicle. The door on the driver's side is already open and another man exits the vehicle from it. The officer identified Avalos as the man in the video exiting from the driver's side.

The unidentified man and woman walked into the storage facility while Avalos remained by the vehicle. The officer parked his car and approached Avalos. The officer asked Avalos who owned the car, and Avalos stated it belonged to a friend. During their conversation, the officer noticed the Corolla's key was still in the ignition and was the only key on the key ring. The officer believed this to be significant since, based on his training and experience, there is normally more than one key on a car owner's key ring. However, the officer also observed that the key looked like a normal Toyota key and did not appear to be a shaved key.[2]

---

[2] "[A] shaved key is a standard vehicle key that has been shaved down with a metal file or other hard object to make it much slimmer than a regular key. A shaved key enables the user to bypass the pins in the ignition cylinder, so that the key may be used to start cars other than the one for which the key was designed, and to enter such cars as well." (*People v. Najera* (2008) 43 Cal.4th 1132, 1135.)

The officer searched the trunk of the Corolla and found several other license plates. At least one of the other plates in the trunk did not match the license plate affixed to the Corolla. The officer testified that car thieves will sometimes switch license plates on a stolen vehicle to evade police detection. The officer ran the vehicle identification number for the Corolla and was notified it had been stolen. The victim was later identified as the car's owner.

The officer arrested Avalos after learning the car had been stolen. When asked why he arrested Avalos, the officer explained, "Because I observed him driving [the Corolla] which was reported stolen. He was in direct possession of that car at that time." After the arrest, the officer read Avalos his *Miranda* rights and then continued questioning him. When asked for more information about the Corolla, Avalos stated he was considering purchasing it from a friend.[3] But the victim testified she had not been selling her car when it went missing. She did not recognize Avalos and had not given him permission to drive her car.

*B. Motion to Reopen Evidence and Verdict*

After the prosecution rested, the trial court asked defense counsel if Avalos intended to testify. She indicated he did not. Avalos then began to speak. The court suggested he speak with his attorney before speaking in open court. After Avalos spoke to his counsel, he stated in open court, "I wasn't driving the car is what I was – and the thing was [my counsel] is having a hard time with presenting that for some reason. [A]nd I'm not sitting well with it."

---

[3] There is some conflict in the record as to whether Avalos stated he was considering buying the car from a friend or from an "unnamed female." The officer testified at trial that Avalos represented he was considering purchasing it from a friend, but his report stated Avalos had said he was buying it from an "unnamed female." This discrepancy is immaterial to our analysis.

The trial court interpreted Avalos' statement to be a *Marsden* motion, and held a *Marsden* hearing in closed court.[4] Following the closed court hearing, the court deemed the *Marsden* motion withdrawn.

The day after the *Marsden* hearing, the trial court advised Avalos of his right to testify. Avalos stated he had discussed the issue with his counsel and had decided not to testify. Avalos then indicated he had a question and spoke to his counsel. After their discussion, Avalos stated, "Everything stands the same." Avalos' counsel joined his waiver. The court found Avalos had made "a knowing, intelligent, and voluntary waiver [of his right] to testify." Avalos then rested his case without presenting any witnesses.

The trial court went over jury instructions with both sides, and the prosecution made its closing argument. After the prosecution finished, Avalos' counsel asked for a sidebar. The request was granted, and a sidebar was held in chambers. Avalos stated he wished to testify. The prosecution did not object and stated it would submit to the court's discretion. An ex parte proceeding with Avalos and his counsel occurred in closed court.

Following the closed proceeding, the trial court stated it was interpreting Avalos' request to testify as a request to reopen the evidence. In evaluating the request, the court considered four factors: (1) the stage of the proceedings when the request was made; (2) the defendant's diligence in presenting the new evidence; (3) whether the jury might give the new evidence undue emphasis; and (4) the evidence's significance. (See *People v. Funes* (1994) 23 Cal.App.4th 1506, 1520 (*Funes*).)

The trial court denied the request based primarily on the first two factors. The court noted it needed to "consider[] whether the request is a buyer's remorse," since

---

[4] A *Marsden* motion is derived from *People v. Marsden* (1970) 2 Cal.3d 118. Generally, it is a request made by a defendant to discharge and replace his or her court-appointed counsel. (*People v. Armijo* (2017) 10 Cal.App.5th 1171, 1178.)

Avalos had made it after the prosecution's closing argument. The court also explained "it inquired of [Avalos] at some length before" taking his waiver, and Avalos had stated he had no other questions for the court or his counsel.

Trial resumed with Avalos' closing argument. Generally, his counsel argued Avalos did not know the Corolla was stolen.

The jury found Avalos guilty of receiving a stolen motor vehicle (count two) but not guilty of unlawfully taking a motor vehicle (count one). The trial court found the prior strike allegation to be true. Avalos was sentenced to an aggregate term of six years, comprised of the mid-term of three years on count two, which was doubled based on the prior strike.

On appeal, Avalos argues the trial court abused its discretion by denying his request to reopen the evidence.

II

DISCUSSION

"The decision to reopen a criminal matter to permit the introduction of additional evidence is a matter left to the broad discretion of the trial court." (*People v. Jones* (2012) 54 Cal.4th 1, 66.) In evaluating the trial court's exercise of this discretion, "we consider the following factors: (1) the stage the proceedings had reached when the motion was made; (2) the defendant's diligence (or lack thereof) in presenting the new evidence; (3) the prospect that the jury would accord the new evidence undue emphasis; and (4) the significance of the evidence." (*Funes*, *supra*, 23 Cal.App.4th at p. 1520.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) Here, the court's application of the above factors was reasonable and not an abuse of discretion.

6

The first factor weighs slightly against Avalos since he sought to reopen the evidence after the parties had discussed jury instructions and the prosecution had given its closing argument. There would be some delay caused by allowing Avalos to testify. As noted by the trial court, the prosecution would be allowed a second closing argument. Further, the parties would have to reassess jury instructions. (See, e.g., *People v. Earley* (2004) 122 Cal.App.4th 542, 546 [motion to reopen "came too late in the proceedings" when it was made after both sides had rested but before jury instructions were given].) But the request was made prior to jury deliberations, so it was not so late that the jury would have to cease deliberations, hear the new testimony along with new closing arguments, and then begin deliberations anew. (See, e.g., *Funes*, *supra*, 23 Cal.App.4th at p. 1520 [motion to reopen made after jury had been deliberating for a full day "came at an extremely late stage in the proceedings"].)

The second factor weighs heavily against Avalos. As noted in his briefs, Avalos sought to reopen the evidence so he could testify that he was not driving the Corolla.[5] But Avalos could have provided this testimony during the trial. He was well aware the prosecution claimed he was driving the car. As set forth above, the officer testified he was driving the Corolla. The prosecution also introduced video footage showing Avalos exiting the Corolla from the driver's side after the car was parked.

Before resting his case, Avalos' counsel represented that Avalos did not intend to testify. Avalos then began directly addressing the trial court. The court cut him off and strongly suggested that he consult his attorney before saying anything else on the record. Avalos continued, however, and expressed frustration that his counsel was not introducing evidence that he "wasn't driving the car," which was not "sitting well" with him. The court interpreted this statement as a *Marsden* motion, which Avalos later

---

[5] While the specific nature of Avalos' proposed testimony was discussed during the closed proceeding and not discussed in open court, both Avalos' opening and reply briefs state without redaction that Avalos sought to testify he was not the driver.

7

withdrew. This sequence of events shows Avalos knew he had been identified as the Corolla's driver and was aware no evidence to the contrary had been introduced.

Further, after the *Marsden* motion was withdrawn, the trial court explained to Avalos his right to testify. In particular, the court stated, "the decision whether or not to testify in your case is a big one, a really big one, and it should always be made after you have talked to your lawyer and gotten her advice because there could be some upsides to testifying, but there could be a lot of downsides to testifying too." Avalos indicated that he had spoken to his counsel and decided not to testify. The court asked Avalos whether he had any questions. Avalos then indicated he had a question, and the court instructed him to consult his counsel before speaking on the record. After speaking to counsel, Avalos said, "everything stands the same," and waived his right to testify. Given that Avalos had previously voiced frustration with his counsel's failure to present evidence he was not the driver, he could have consulted his attorney as to whether he should testify on this issue prior to waiving his right to testify.

In summary, Avalos was aware of the importance of his right to testify. He was given time to discuss with counsel whether he should waive that right. He was also aware that the prosecution claimed he was driving the stolen vehicle and that no evidence had been introduced to the contrary. Any evidence that he was not the driver "was not . . . 'new'; it was merely overlooked. This case stands in stark contrast to those cases where reviewing courts have found that trial courts have abused their discretion by rejecting a defense motion to reopen. In those cases the defense, through no fault of its own, discovered highly relevant new evidence late in the proceedings. [Citations.] Instead, this is a case where defense counsel had full access to the evidence before trial, but for tactical reasons or because of inadvertence and neglect [counsel] did not introduce the evidence." (*Funes*, *supra*, 23 Cal.App.4th at p. 1521.) As the trial court implied, this appears to a case of "buyer's remorse," where Avalos regretted his decision not to testify after hearing the prosecution's closing argument.

Given our findings as to the second factor, we need not address the third or fourth factors. Our Supreme Court has explained, "There is no abuse of discretion in refusing to reopen where 'the evidence the defense sought to offer at reopening was indisputably available *during* the trial.'" (*People v. Jones*, *supra*, 54 Cal.4th at p. 66.) As outlined above, the evidence Avalos sought to introduce was clearly available during trial. As such, the trial court did not abuse its discretion in denying his motion to reopen the evidence.

## III

## DISPOSITION

The judgment is affirmed.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

GOETHALS, J.

9