Filed 2/23/15  P. v. Perryman CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RICHARD LEE PERRYMAN,<br><br>    Defendant and Appellant. | B252922<br><br>(Los Angeles County<br>Super. Ct. No. NA094685) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tomson T. Ong, Judge.  Affirmed.

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Chung Mar and Jessica C. Owen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Richard Lee Perryman filed a timely appeal from his conviction and sentence for seven counts of selling and offering to sell marijuana and cocaine. We affirm.

## BACKGROUND

An amended information filed October 4, 2013 charged Perryman with two counts (counts 1 and 3) of the sale of marijuana (Health & Saf. Code, § 11360, subd. (a)), and five counts (counts 2, 4, 5, 6, and 7) of the sale of cocaine (Health & Saf. Code, § 11352, subd. (a)). The information also alleged that Perryman had two prior convictions for which he had served prison terms (Pen. Code, § 667.5, subd. (b))[1] and two prior convictions that qualified under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). Perryman pleaded not guilty and denied the allegations.

At trial, Ganzalo (or Gonzalo) Rodriguez testified that he worked with Detective Andrew Calderon of the Long Beach Police Department, making undercover narcotics buys. Rodriguez was paid $60 for each buy. In January and February 2013, Rodriguez made six buys from Perryman.

On January 3, 2013, Detective Calderon drove Rodriguez to Artesia Boulevard and Hammond in Long Beach to "try to buy some drugs on the street." Detective Calderon searched Rodriguez to make sure he had no drugs or money and gave him two $20 bills. Perryman was on the sidewalk on the Artesia side. Rodriguez told Perryman he was trying to get $20 of "cush," and Perryman told him he needed to make a phone call to see if his supplier could drive over. While Perryman was on the phone, Rodriguez told him to make it $40. Perryman said he wanted $5, and Rodriguez told him to make it $35 and keep the rest. Rodriguez and Perryman waited for five to seven minutes in the parking lot of a donut shop, where a grey Mercedes drove up. Rodriguez gave the money to Perryman, who gave the money to the man in the car, whose name Rodriguez later learned was "Ant." Ant gave two bags of marijuana to Perryman, who gave the drugs to Rodriguez. Rodriguez asked for Ant's and Perryman's phone numbers, and Perryman gave them to him. Rodriguez left the area and gave the two bags of marijuana to

---

[1] All future statutory references are to the Penal Code unless otherwise indicated.

2

Detective Calderon. The prosecution played a recording of the transaction for the jury and provided transcripts.

On January 15, 2013 around 5:30 p.m., Rodriguez called Ant and asked for $40 of cush and $20 of rock cocaine. Ant told Rodriguez to meet him in a McDonald's parking lot at Artesia and Downey, and Detective Calderon drove Rodriguez there, searching him, giving him three $20 bills, and placing recording equipment on him. Rodriguez walked to the parking lot and saw Ant's car. Perryman got out of the car and met Rodriguez, giving him four little bags of marijuana and one bag of rock cocaine. Rodriguez gave Perryman the $60, and Perryman said he had another connection for rock cocaine if Rodriguez wanted to try it. Perryman got back into Ant's car and the car drove away. Rodriguez gave the drugs to Officer Calderon.

An hour later on January 15, around 6:30 p.m., Rodriguez called Perryman and asked for $40 of "white girl," or rock cocaine, and Perryman told him to come to the donut shop. Detective Christopher Bolt gave Rodriguez $45 to make the buy and drove him to the donut shop, where Rodriguez met Perryman. Perryman told Rodriguez they would have to walk to some apartments on Paramount Boulevard and 68th, and when they arrived there Perryman asked for $5. Rodriguez gave him $25 and Perryman went inside the complex, and then called Rodriguez to say he only had $25. Rodriguez told Perryman he thought he'd given him $40 and asked him to bring out one bag, and Perryman returned with one bag of rock cocaine. Rodriguez gave Perryman the other $20, Perryman went back inside, and in five minutes returned with another bag of rock cocaine. Rodriguez handed over the bags of rock cocaine to Detective Bolt.

On January 22, Rodriguez bought another two bags of rock cocaine for $40 from Perryman, who got the drugs from the same apartment complex, and Rodriguez gave the drugs to Detective Calderon. A recording from surveillance equipment set up by Detective Calderon was played for the jury. On January 24, Rodriguez made another undercover buy from Perryman with $40 that Detective Calderon gave him. Rodriguez met Perryman on the street near the homeless encampment in which Perryman lived. Perryman made a phone call, and the two men walked to a carwash. Rodriguez gave

3

Perryman the $40 and a car picked Perryman up. Two or three minutes later the car brought Perryman back, and Perryman got out and gave Rodriguez two bags of rock cocaine. Rodriguez gave the drugs to Detective Calderon. Again, a recording from surveillance equipment was played for the jury. On February 2, 2013, Rodriguez called Perryman and asked him for $60 of rock cocaine. Perryman told him he would call his buddy to deliver it, and told Rodriguez to meet him at the car wash. Detective Calderon gave Rodriguez three $20's and searched Rodriguez. Perryman called and told Rodriguez to walk to his tent on a dead end off Artesia, and Rodriguez gave Perryman the $60. A Buick drove up and Perryman got inside for five to seven minutes, and then came out and asked Rodriguez to go inside the tent so he could break off a piece of the cocaine. Inside the tent, Perryman divided the cocaine and gave Rodriguez his share in a piece of paper. Rodriguez gave the cocaine to Detective Calderon. A recording from equipment set up by Detective Calderon was played for the jury.

Detective Calderon arrested Perryman in his tent right after the controlled buy. The driver of the Buick was arrested later in the day and the money found in his pants pocket was turned over to Detective Calderon.[2]

On cross-examination, Rodriguez explained that he had worked for the police department since July 2010 and had been paid a little over $28,000, at $60 for every successful purchase; if he did not get any drugs, he was paid $20. Perryman's tent was in a homeless encampment. Rodriguez never used any of the drugs he bought, and he was searched by the officer at each buy.

Detective Calderon testified that he had participated in hundreds of controlled buys, paying $60 for each transaction, and had worked with Rodriguez on more than 200 buys. He always provided the police assistant with the money to buy the drugs and usually photocopied the currency before the controlled buy. He searched Rodriguez before and after each buy from Perryman. Detective Calderon had photocopied the three

---

[2] The driver of the Buick was Perryman's codefendant; he is not a party to this appeal.

4

$20's he gave Rodriguez on February 2 to buy rock cocaine (People's exh. 35), and those $20's were found in a pocket of the Buick driver after he was arrested (People's exh. 36). In his experience, people on the street worked as "runners" for drug dealers, and their responsibility was to find people to purchase drugs. Runners were paid in money or drugs, either by the dealers or by taking money during the deal.

The jury convicted Perryman of all counts. Perryman waived a jury trial on the prior conviction allegations, and the trial court found them true. The trial court sentenced Perryman to 26 years and eight months, as follows: on count 2 (the base count), 12 years, comprised of a five-year term doubled to 10 years (pursuant to the strike prior), plus two years for the two prior prison terms; on counts 1 and 3, two consecutive terms of two years, each comprised of a one-year term doubled to two years pursuant to the strike prior; and on counts 4, 5, 6, and 7, four consecutive terms of 32 months, each comprised of a 16-month term doubled pursuant to the strike prior. The court gave Perryman custody credit and ordered him to pay fines and fees.

## DISCUSSION

### I. The court did not deprive Perryman of his right to confrontation.

During cross-examination of Detective Calderon, Perryman's counsel questioned the detective about the practice of photocopying the money used in a controlled buy. Detective Calderon admitted he did not always photocopy the bills, especially when he did not expect to recover the money, and had not always done so before the controlled buys from Perryman. When he searched Rodriguez, it was possible that he missed places where Rodriguez could hide dollar bills. On January 24, Detective Calderon did photocopy the buy money but it was not recovered. On February 2, 2013, the police planned to conclude the investigation and make arrests, and Detective Calderon photocopied the buy money.

On redirect, Detective Calderon stated that it was not the practice to write all the case information on the photographs of the buy money, which were kept in the case file, and he had never mixed up buy money from one incident with the money used in another. The buy money used in the incidents prior to February 2 was not recovered, as no one

5

was arrested.  The police were not prepared to make an arrest on those dates, as Perryman had continued to lead them to other drug dealers.

On recross-examination, Perryman's counsel asked "Detective Calderon, when was the last time the funds were audited?"  The court sustained the prosecutor's objection, stating, "Exceeds scope of redirect."  Counsel asked, "May I be heard, your honor?" and the court answered, "No."  Counsel continued, "Is there any entity that you report to regarding the disposition of taxpayer funds?"  The prosecution objected to the question as irrelevant, and the court stated, "Same ruling, exceeds scope of redirect and not relevant."

Perryman claims this exchange violated his right to confront the witness.  We do not review confrontation clause questions on appeal if no objection on those grounds was raised below.  (*People v. Raley* (1992) 2 Cal.4th 879, 892.)  Objections on other grounds do not preserve a constitutional objection.  (*Ibid.*)  Perryman has forfeited this claim.  Even if he had not, however, we would reject it.

The Sixth Amendment right of confrontation guarantees the right to conduct reasonable cross-examination, and "leaves room for trial courts to impose reasonable limits on a defense counsel's cross-examination of a witness."  (*People v. Pearson* (2013) 56 Cal.4th 393, 454.)  Such limits are within the trial court's discretion, and we will find a violation of the confrontation clause only if "'the prohibited cross-examination would have produced "a significantly different impression of [the witnesses'] credibility."'"  (*People v. Brown* (2003) 31 Cal.4th 518, 545–546.)  It is not a violation of the confrontation clause if cross-examination is limited in a way that simply makes it less effective for the defense.  (*People v. Perez* (2000) 82 Cal.App.4th 760, 765.)

Here, Detective Calderon had been questioned thoroughly about when and how he kept a photocopied record of the buy money, and had testified that he did not photocopy the money unless he expected to recover the money through an arrest (as he did on February 2, when he photocopied the money that Rodriguez gave Perryman, which was later recovered from the Buick driver).  The jury had ample opportunity to assess Officer Calderon's credibility on this issue.  (See *People v. Homick* (2012) 55 Cal.4th 816, 861.)

6

The trial court concluded that questioning about an audit of buy money funds was irrelevant and beyond the scope of the redirect examination, and that was not outside the court's discretion. Further, even assuming that inquiry into police department audit of the funds would make the cross-examination more beneficial for Perryman, the evidence was strong that Perryman sold the drugs in each transaction, given the testimony of Rodriguez and Detective Calderon (and the playing of the surveillance recordings), so that the loss of any marginal benefit resulting from the court's limitation on recross-examination was harmless error. (See *People v. Cage* (2007) 40 Cal.4th 965, 991–992.)

## II. The trial court did not violate section 1204 during the sentencing hearing.

The prosecution filed a sentencing memorandum and the defense did not. At Perryman's sentencing hearing, Perryman's attorney asked to be heard, and argued that while the evidence was "fairly strong," Perryman was a homeless man serving as a "middleman," living in a tent and doing what he needed to survive. The court asked, "What's wrong with a shelter?" Counsel stated that Perryman was attending school full time with good grades, and the court responded, "It tells me that he is pretty smart." Counsel emphasized that the worst part of Perryman's criminal record was in the early 1980's, and it was difficult to line up to get into a shelter if you attended classes. The court stated: "Most college students flip burgers at McDonald's. He chose the easy way out. He became the middleman with dope." Counsel rejoined that it was hard to get a job at McDonald's and while Perryman got general relief, he used it to pay his tuition. Perryman also volunteered and went to church; the court responded, "[T]he pastor could have arranged things for him if he really and truly [was] a churchgoing man." The court asked if Perryman had exhausted everything, and counsel responded, "He was just in a bad situation, making some bad decisions, but trying really hard. These are nonviolent offenses."

The court commented that Perryman had moved from robbery, which was more typical of younger defendants, to "more of the entrepreneurship crimes, which is marketing, being the marketing director for a bunch of dope dealers," and asked Perryman's counsel, "What else you got?" Counsel responded, "I have a number of

7

family members that would speak to his situation." The court responded, "I'm sure they will—there is no victim impact. There is no defendant impact statements in a sentencing."

Counsel continued to assert that Perryman had done his best, getting in less trouble than before, and the court responded, "Not just one type of drugs. He is like marketing director for a pharmacy." Counsel reminded the court it had discretion, and Perryman was "an older gentleman who was acting as a middleman to get by with a very, very old record. . . . [¶] . . . [¶] We are asking for [a] little mercy on this one." The court asked Perryman if he wished to tell him anything, and Perryman stated: "I regret the circumstances that took place. I want to get back on track to a better future." After the prosecutor pointed out that Perryman also had two felony convictions in 2002 and 2007 (burglary and petty theft), the court proceeded to sentence Perryman.

Perryman argues that the trial court violated section 1204 in refusing to allow his family members to speak. Section 1204 provides that circumstances in aggravation or mitigation of punishment "shall be presented by the testimony of witnesses examined in open court. . . . No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of the punishment, except as provided in this and the preceding section." Testimony under section 1204 must be sworn testimony subject to cross-examination. (*People v. Evans* (2008) 44 Cal.4th 590, 598–599.)

In *People v. Murray* (2012) 203 Cal.App.4th 277, the defendant's counsel stated that defendant's mother and grandfather wished to address the court briefly, and the trial court denied the request because it was not victim impact testimony. (*Id.* at pp. 289–290, disapproved on other grounds in *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1370–1371.) The court of appeal found the denial proper under section 1204, because "that section requires sworn testimony [citation], something Murray's defense counsel did not offer to provide. Instead, she asked that two witnesses be allowed to address the court. Therefore, the ruling itself was proper under section 1204." (*Murray*, at p. 290.) Further, without some indication that having Murray's relatives address the court would have led

the court to impose a lower sentence, "[e]ven if error occurred, it is therefore harmless." (*Ibid.*)

Similarly here, Perryman's counsel asked only that relatives wished to "speak to his situation." The trial court stated it was not victim impact testimony, and denied the request. Counsel did not state that he was prepared to have the relatives testify under oath and subject to cross-examination, and so the court's ruling was proper. Further, there is no indication what the statements were or that the statements would have led the court to impose a lesser sentence, so even had there been error it would have been harmless.

## III. Perryman's counsel did not provide ineffective assistance.

### A. *Consecutive sentence on count 3*

Perryman argues that the trial court erred in imposing a consecutive sentence on count 3, as it failed to recognize that a concurrent sentence was available and appropriate, and his counsel's failure to object constituted ineffective assistance.

Count 2 alleged that on January 15, 2013, Perryman sold cocaine; count 3 alleged that on the same date, January 15, Perryman sold marijuana; count 4 alleged that on January 15, 2013, Perryman sold cocaine. The evidence at trial was that on January 15, Rodriguez bought cocaine and marijuana from Perryman after calling him around 5:30 p.m. (supervised by Detective Calderon), and that an hour later on the same day Rodriguez bought cocaine from Perryman in a separate transaction (supervised by Detective Bolt). Counts 2 and 3 therefore charge the purchase of cocaine and marijuana, respectively, in a single controlled buy, and count 4 describes the later separate controlled buy of cocaine. The trial court indicated at sentencing (as to all counts): "consecutive sentence is warranted because of the events of the crimes occurred on different dates and under different circumstances. Also different narcotics were sold on different dates." The court imposed consecutive sentences on each count, including a consecutive one-year sentence on count 3 (with no objection from Perryman's counsel), doubled pursuant to the strike prior.

9

Perryman was convicted of multiple felonies, and he had two prior convictions that qualify as prior convictions under the Three Strikes law. "[S]ection 667, subdivision (c)(6) and (7) requires consecutive sentences whenever a defendant with one or more qualifying prior convictions is convicted, as here, of multiple serious or violent felonies 'not committed on the same occasion, and not arising from the same set of operative facts.'" (*People v. Caspar* (2004) 33 Cal.4th 38, 42; *People v. Hendrix* (1997) 16 Cal.4th 508, 512–513.) "Consecutive sentencing is discretionary under section 667, subdivision (c) *only* if the current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts.'" (*Caspar*, at p. 42.) The trial court in this case was required to impose consecutive sentences on all but count 3. Because count 3 arose on the same occasion as count 2, occurring during the same controlled buy, the trial court had discretion in this case to impose a concurrent rather than a consecutive sentence on count 3.

Perryman admits that his counsel's failure to object forfeits his claim "involving the trial court's failure to properly make or articulate its discretionary sentencing choices." (*People v. Scott* (1994) 9 Cal.4th 331, 353.) Instead, he argues that his trial counsel was ineffective for failing to object to the consecutive sentence on count 3. Perryman must demonstrate that his counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's errors, Perryman would have received a shorter sentence. (See *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126; *Strickland v. Washington* (1984) 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674].) We presume that counsel acted for tactical reasons rather than out of neglect (*Cullen v. Pinholster* (2011) ___ U.S. ___ [131 S.Ct. 1388, 1404]), especially where "'the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged.'" (*People v. Wilson* (1992) 3 Cal.4th 926, 936.)

"[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 502.) Counsel was not unreasonable in failing to object. First, we disagree with Perryman that the trial court did not recognize that it had the discretion to impose a concurrent sentence

10

on count 3. The court stated not that consecutive sentences were required, but that they were "warranted," given that the sales occurred on different dates and under different circumstances and that different narcotics were sold. Count 3 involved the sale of marijuana on the same occasion as the sale of cocaine in count 2, and the court's statement can be interpreted as exercising its discretion to impose a consecutive sentence on count 3 because it involved a different drug than in count 2. Second, the trial court's remarks at sentencing show that it was disinclined to show "[a] little mercy" to Perryman, as counsel had requested. Counsel may have chosen not to continue to push for leniency from the court, given the court's firm rejection of his earlier pleas.

As we find no deficient performance, we need not determine whether Perryman suffered prejudice. We do not believe, however, that given the temper of the trial court's remarks at sentencing, there is a reasonable probability that the trial court would have imposed a concurrent sentence and shortened the overall sentence by two years.

### B. Counsel's failure to file a Romero motion

In supplemental briefing we requested during oral argument, Perryman argues that his counsel's failure to file a formal request that the court dismiss the remaining strike prior also constituted ineffective assistance.

The information alleged that Perryman had five convictions, four for robbery (§ 211) and one for attempted robbery (§§ 664, 211), all with a conviction date of January 30, 1981, which qualified as serious or violent felonies under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). Perryman waived a jury trial on the prior conviction allegations, and the trial judge found true two of the prior strikes (two counts of robbery). The court then stated it would use "one, not both" of the prior convictions, and sentenced Perryman using that strike prior to double the terms of imprisonment on all seven counts.

"Under section 1385, subdivision (a), a 'judge . . . may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed.' 'In [*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497], we held that a trial court may strike or vacate an allegation or finding under

11

the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony, on its own motion, "in furtherance of justice" pursuant to . . . section 1385[, subd.] (a).'" (*People v. Carmony* (2004) 33 Cal.4th 367, 373–374.) "A defendant has no right to make a motion, and the trial court has no obligation to make a ruling, under section 1385. But he or she does have the right to 'invite the court to exercise its power by an application to strike a count or allegation of an accusatory pleading, and the court must consider evidence offered by the defendant in support of his assertion that the dismissal would be in furtherance of justice.'" (*Id.* at p. 375.) The court may strike a strike prior only if in light of the nature of the current and prior convictions, "and the particulars of his background, character, and prospects," the defendant, in whole or in part, is outside the spirit of the Three Strikes law, and "hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1988) 17 Cal.4th 148, 161.) "[A]ny failure on the part of a defendant to invite the court to dismiss under section 1385 following *Romero* waives or forfeits his or her right to raise the issue on [direct] appeal." (*People v. Carmony*, *supra*, 33 Cal.4th at pp. 375–376.) To succeed on his claim that the failure to make a *Romero* request was ineffective assistance, as we explained above, Perryman must demonstrate that his counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's errors, the court would have struck the remaining strike prior.

Regarding his current convictions, Perryman argues that he was homeless and "minding his own business" when approached for the drugs, he asked for small amounts of money, and was only a middleman. As he acknowledges, there is no detail in the record regarding the nature of the robbery in 1981. His background includes prior convictions in 2002 (burglary) and 2007 (petty theft with a prior) for which he served time in prison. The trial court read and considered the probation report, which states that Perryman had a significant criminal history (including another burglary conviction in 1996), had been committed at the state and local levels, and repeatedly demonstrated an unwillingness to change his criminal behavior. The report also recommended that if

12

convicted, Perryman should be sentenced to state prison with a suspended sentence and three years probation. As to his character and prospects, Perryman points out that at the time of the current convictions he was attending college classes and church, where he also volunteered.

Perryman's trial counsel made a valiant argument for leniency at sentencing, in the face of the trial court's obvious disinclination to discount Perryman's criminal history and the seriousness of the current charges. Given Perryman's substantial criminal history, competent counsel could reasonably have made a tactical decision that filing a formal *Romero* request was futile, especially as the trial court was clearly aware of its discretion and had already exercised it in striking one of Perryman's two prior strikes. As above, we find no deficient performance.

## IV. The sentence is not cruel and unusual punishment.

Perryman argues his sentence of 26 years and eight months on the seven counts of conviction is cruel and unusual punishment. He made this objection in the trial court (which overruled the objection) and therefore has preserved it on appeal. He argues that the circumstances of the offense and his personal characteristics show "'the penalty imposed is "grossly disproportionate to [his] individual culpability" (*ibid*.), so that the punishment "'""shocks the conscience and offends fundamental notions of human dignity."'"'"' (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1300.)

Perryman bears the burden to show the sentence is cruel and unusual. (*People v. Johnson* (2010) 183 Cal.App.4th 253, 296.) We (1) review the nature of the offense and the offender, including the degree of danger both present to society; (2) compare the challenged punishment to the punishment for more serious crimes in our jurisdiction; and (3) compare the challenged punishment to punishments for the same offense in other jurisdictions. (*Id.* at pp. 296–297.) We may base our decision on the first prong alone, (*id.* at p. 297) and do so here, as it is the only prong that Perryman addresses.

Perryman argues he was "a 52-year-old transient who was minding his own business when approached by a police citizen/agent who was working on commission," only earned a few dollars per transaction, was not a dealer, and never used a weapon or

hurt anyone. A history of recidivism, however, "is part of the nature of the offense and the offender." (*People v. Meeks* (2004) 123 Cal.App.4th 695, 709.) Perryman had eight prior felonies, and his sentence was pursuant to the Three Strikes law, "plac[ing] on the scale not only his current felony, but also his long history of felony recidivism. Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions" in enacting the Three Strikes law, to punish more harshly "'those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.'" (*Ewing v. California* (2003) 538 U.S. 11, 29 [1235 S.Ct. 1179, 155 L.Ed.2d 108].) Regarding the three strikes law, "California appellate courts have consistently found [that it] is not cruel and unusual punishment." (*People v. Mantanez* (2002) 98 Cal.App.4th 354, 359.) Further, as the trial court found, Perryman's crimes showed he was engaged in a drug enterprise which required sophistication and planning, which included contacts with multiple dealers.

Perryman's sentence is undoubtedly harsh, but this is not the rare and extreme case that meets the standard of "gross disproportionality." (*Lockyer v. Andrade* (2003) 538 U.S. 63, 72–73 [123 S.Ct. 1166, 155 L.Ed.2d 144].)

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

CHANEY, Acting P. J.

BENDIX, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.