[No. S141357. July 24, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
BLAINE ALLEN EVANS, Defendant and Appellant.

**COUNSEL**

Richard M. Doctoroff, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson and Mary Jo Graves, Chief Assistant Attorneys General, Gerald A. Engler, Assistant Attorney General, Ryan B. McCarroll, Linda M. Murphy and David M. Baskind, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KENNARD, J.**—California law requires that in a criminal case a trial court must, before imposing sentence, ask the defendant whether there is "any legal cause to show why judgment should not be pronounced against him." (Pen. Code, § 1200.)[1] This inquiry is called the "allocution."[2] At issue is whether, in response to the allocution, the defendant has the right to make an unsworn personal statement in mitigation of punishment. Here, the Court of Appeal held that a criminal defendant has no such right, expressly disagreeing with *In re Shannon B.* (1994) 22 Cal.App.4th 1235 [27 Cal.Rptr.2d 800] (*Shannon B.*), in which a different Court of Appeal reached a contrary conclusion. We conclude that California law gives a defendant the right to

---

[1] Unless otherwise stated, all statutory citations are to the Penal Code.

[2] In legal parlance, the term "allocution" has traditionally meant the *trial court's inquiry of a defendant* as to whether there is any reason why judgment should not be pronounced. (*People v. Cross* (1963) 213 Cal.App.2d 678, 681 [28 Cal.Rptr. 918]; Barrett, *Allocution* (1944) 9 Mo. L.Rev. 115, 115–116; Black's Law Dict. (5th ed. 1979) p. 70.) In recent years, however, the word "allocution" has often been used for *a mitigating statement made by a defendant in response to the court's inquiry.* (Black's Law Dict. (8th ed. 2004) p. 83.) Here, we apply the term's traditional meaning.

make a personal statement in mitigation of punishment but only while under oath and subject to cross-examination by the prosecutor.

## I

A jury convicted defendant Blaine Allen Evans of receiving stolen property, a felony. The trial court found that defendant had been convicted of five felonies for which he had served prior prison terms (§ 667.5, subd. (b)) and that he had previously been convicted of a serious or violent felony constituting a "strike" (§ 1170.12, subd. (c)(1)).

On August 20, 2004, the day set for sentencing, the trial court asked whether there was "any legal cause why sentence cannot now be pronounced." Defense counsel replied, "No legal cause." The court then asked defense counsel if he would like "to make any comments." Defense counsel responded that the offense was attributable to defendant's drug addiction, and that the trial court should give defendant "one more chance" by placing him on probation and ordering placement at a residential drug treatment program. The prosecutor replied that it was "too late" for probation because of defendant's substantial criminal record and his failure to take advantage of previous opportunities to attend drug programs, and that defendant "simply has not earned a right to get probation." After a brief discussion of whether the court should order restitution to the victim, the trial court asked, "With that, the matter's submitted, correct?" Defense counsel replied, "Submitted."

The trial court then agreed with the prosecutor that defendant did not "deserve the opportunity" for probation, because two years earlier defendant had been placed in another drug program but had "walked off that program," and he ultimately was sentenced to 16 months in prison. The court formally denied defendant's request for probation, found no good cause to dismiss defendant's prior "strike," and ordered defendant "committed to the Department of Corrections." At this point, defendant interjected: "Can I speak, your honor?" The trial court replied, "No." It then imposed a five-year prison sentence.

On appeal, defendant argued that when the trial court at the sentencing hearing denied his request to speak, it violated his right to make a personal statement in mitigation of punishment. The Court of Appeal disagreed. Its published opinion held that a criminal defendant does not have such a right, disagreeing with *Shannon B.*, a 1994 decision by a different Court of Appeal, which held that section 1200 gives criminal defendants "a right . . . to make

personal statements in their own behalf and present information in mitigation of punishment." (*Shannon B., supra*, 22 Cal.App.4th at p. 1238.) The Court of Appeal here relied on two older decisions, *People v. Cross, supra*, 213 Cal.App.2d 678, 682, and *People v. Sanchez* (1977) 72 Cal.App.3d 356, 359 [140 Cal.Rptr. 110]. We granted review to resolve the conflict.

## II

Section 1200 provides: "When the defendant appears for judgment he must be informed by the Court, or by the Clerk, under its direction, of the nature of the charge against him and of his plea, and the verdict, if any thereon, and must be asked whether he has any *legal cause to show why judgment should not be pronounced* against him." (Italics added.) Section 1201 states: "He or she *may show, for cause against the judgment*: [¶] (a) That he or she is insane; and if, in the opinion of the court, there is reasonable ground for believing him or her insane, the question of insanity shall be tried . . . [¶] (b) That he or she has good cause to offer, either in arrest of judgment or for a new trial; in which case the court may, in its discretion, order the judgment to be deferred, and proceed to decide upon the motion in arrest of judgment or for a new trial." (Italics added.)

The Court of Appeal here held that section 1200 only permits a defendant to respond to the trial court's allocution by showing the types of "cause against the judgment" described in section 1201: that the defendant is insane, that the trial court should grant a motion in arrest of judgment, or that the court should order a new trial. Defendant challenges that holding. He argues that section 1200 does give a criminal defendant the right to make a personal statement in mitigation of punishment, and that the trial court here violated this right. In support, he cites the Court of Appeal decision *Shannon B., supra*, 22 Cal.App.4th 1235. That case relied on the legislative history of sections 1200 and 1201, which we describe below.

As explained in *Shannon B., supra*, 22 Cal.App.4th 1235, sections 1200 and 1201 were enacted in 1872, as part of California's first Penal Code; they are virtually identical to statutes that had been enacted by the first California Legislature in 1850, when California acquired statehood. (Stats. 1850, ch. 119, §§ 488–489, p. 311.) The criminal procedure statutes enacted in 1850 "were based almost entirely on the 1848–1849 FIELD CODES OF CIVIL PROCEDURE AND CRIMINAL PROCEDURE drafted in New York" (Kleps, *The Revision and Codification of California Statutes 1849–1953* (1954) 42 Cal. L.Rev. 766, fn. 4),

and the antecedents of sections 1200 and 1201 in the 1850 statutes are virtually identical to the Field Codes. (See Comrs. on Practice and Pleadings, Code of Crim. Proc. of the State of N.Y. (1850) pp. 258–259.)[3] The drafters' notes to the Field Code state that these provisions "are in conformity with the existing practice." (Comrs. on Practice and Pleading, p. 259.)

Thus, defendant argues, when the California Legislature in 1872 enacted sections 1200 and 1201, which are the criminal procedure statutes at issue here, it intended to codify those statutes' antecedents enacted in 1850, and the 1850 statutes in turn had adopted the legal practices existing at that time in this country and in England, whose common law became the foundation of California's legal system. (See Stats. 1850, ch. 95, p. 219 ["The Common Law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of the State of California, shall be the rule of decision in all the Courts of this State"].) As defendant explains and as described below, in 1850 the legal practice in this country and in England was to permit a criminal defendant, in response to the trial court's allocution, to make a personal request for lesser punishment.

The concept of allocution has its origins in English common law; it dates back to the 17th century, when punishment for most felony convictions was death, and criminal defendants had neither the right to counsel nor the right to testify on their own behalf. (Thomas, *Beyond Mitigation: Towards a Theory of Allocution* (2007) 75 Fordham L.Rev. 2641, 2645; Marshall, *Lights, Camera, Allocution: Contemporary Relevance or Director's Dream?* (1987) 62 Tulsa L.Rev. 207, 209; Barrett, *Allocution, supra,* 9 Mo. L.Rev. at pp. 119–121; *Shannon B., supra,* 22 Cal.App.4th at p. 1240.) In its earliest form, the purpose of the trial court's allocution was to allow a convicted defendant facing execution to assert that the sentence should not be carried out, but only for these limited grounds: the defendant was insane, was pregnant, had been misidentified, had been pardoned by the Crown, or was

---

[3] The Field Code provisions relevant here are sections 541 and 542. Section 541 provides: "When the defendant appears for judgment, he must be informed by the court, or by the clerk under its direction, of the nature of the indictment, and of his plea, and the verdict, if any thereon; and must be asked whether he have any legal cause to show, why judgment should not be pronounced against him." Section 542 provides: "He may show for cause, against the judgment, [¶] 1. That he is insane; and if, in the opinion of the court, there be reasonable ground for believing him to be insane, the question of his insanity must be tried . . . . [¶] 2. That he has good cause to offer, either in arrest of judgment, or for a new trial; in which case the court may, in its discretion, order the judgment to be deferred, and proceed to decide upon the motion in arrest of judgment, or for a new trial." (See Comrs. on Practice and Pleadings, Code of Crim. Proc. of the State of N.Y., *supra,* § 541, p. 258.)

entitled to the "benefit of the clergy." (Thomas, *supra*, 75 Fordham L.Rev. at p. 2646; see *Shannon B., supra*, 22 Cal.App.4th at p. 1240.)

But by the 19th century, when criminal defendants could testify and be represented by counsel, the purpose of allocution had been broadened, both in England and in the United States, to allow a criminal defendant to make a personal statement in mitigation of punishment. In 1847, a leading British criminal law treatise explained: "It is now indispensably necessary, even in clergyable felonies,[4] that the defendant should be asked by the clerk if he has any thing to say why judgment of death should not be pronounced on him; and it is material that this appear upon record to have been done . . . . On this occasion, he may allege any ground in arrest of judgment; or may plead a pardon, if he has obtained one . . . . *If he has nothing to urge in bar, he frequently addresses the court in mitigation of his conduct, and desires their intercession with the king, or casts himself upon their mercy.*" (1 Chitty, A Practical Treatise on The Criminal Law, *supra*, p. 699, fns. omitted, italics added.)

Although Chitty's treatise mentions only defendants facing a sentence of death, a prominent American criminal law treatise published several years later in 1866, quoting from the very passage by Chitty we mentioned in the preceding paragraph, points to "the formalities which are gone through with at the passing of sentence" *in general*, making no distinction between defendants facing a sentence of death and those subject only to lesser punishments. (1 Bishop, Commentaries on the Law of Criminal Procedure (1866) § 865, p. 609; see also *id.*, p. 609, fn. 5 [discussing decisions in noncapital cases in which the trial court failed to give the allocution].) And an earlier American treatise, published six years after the 1847 British treatise by Chitty, explicitly states that a defendant in a noncapital case is permitted to ask for a lesser sentence: "In capital cases . . . the clerk . . . asks the prisoner—'. . . have you anything to say why sentence of death should not be passed . . . against you;' upon which the prisoner may move in arrest of judgment . . . or he may address any other observations to the judge which he may think proper. *In other [noncapital] cases*, when sentence is about to be passed, *the defendant may address the court in mitigation of punishment*, as well as in arrest of judgment, whether he was tried and convicted or pleaded guilty . . . ." (1 Waterman's Archbold on the Practice, Pleading and Evidence in Criminal Cases (1853) p. 180—1, italics added, fn. omitted.)

---

[4] The phrase "clergyable felonies" refers to crimes for which the trial court has the discretion not to sentence the defendant to death. (1 Chitty, A Practical Treatise on The Criminal Law (5th Am. ed. 1847) pp. 671–674.)

Thus in 1872, when California's Legislature enacted section 1200's allocution provision, the prevailing legal practice in both England and the United States—and followed in California (see p. 595, *ante*)—was that in response to the trial court's inquiry whether there was any legal cause why sentence should not be pronounced, the defendant could make a personal statement asking for lesser punishment. Based on this legal history, the Court of Appeal in *Shannon B.* reasoned: "[T]he inquiry whether a defendant 'has any legal cause to show why judgment should not be pronounced against him' (Pen. Code, § 1200) gives the defendant the right not only to assert insanity or grounds in arrest of judgment or for a new trial (Pen. Code, § 1201), but also the right to make a personal statement and present information in mitigation of punishment." (*Shannon B., supra*, 22 Cal.App.4th at p. 1246.) Defendant urges us to adopt that approach here.

But the language of section 1200 affords no support for that conclusion. Section 1200 requires the trial court to ask the defendant whether there is "legal cause to show why judgment should not be pronounced against him." But when, in response, the defendant asks for lesser punishment, the defendant is not providing the court with reasons *not to pronounce judgment*; rather, the defendant is giving reasons why the court should *pronounce a more lenient sentence*. In the words of the Court of Appeal in this case: "Irrespective of whether the common law right of allocution included a right to make a statement in mitigation, [section 1200] address[es] quite a different matter— whether legal cause to pronounce judgment does or does not exist; i.e., whether there is some infirmity that makes pronouncement of judgment improper."

■ The goal of statutory construction is to implement the intent of the Legislature that enacted the statute whose meaning is in question. "We begin with the statutory language because it is generally the most reliable indication of legislative intent. [Citation.] *If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls.*" (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 211 [64 Cal.Rptr.3d 210, 164 P.3d 630], italics added.) ■ A mitigating statement by defendant is not "legal cause to show why judgment should not be pronounced," and thus does not come within the plain meaning of section 1200. Thus, section 1200 does not entitle the defendant, in response to the trial court's allocution, to offer a personal statement in mitigation of punishment.[5] This does not mean, however, that such a right

---

[5] We disapprove *In re Shannon B., supra*, 22 Cal.App.4th 1235, to the extent it is inconsistent with our decision.

does not exist. As the Attorney General observes, section 1204 provides such a right. But, the Attorney General points out, any such statement must be made under oath and be subject to cross-examination. The Attorney General's argument proceeds as follows.

Section 1204 states: "The circumstances [in aggravation or mitigation of punishment] shall be presented by the *testimony of witnesses examined in open court*, except that when a witness is so sick or infirm as to be unable to attend, his deposition may be taken . . . . *No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court . . . in aggravation or mitigation of the punishment*, except as provided in this and the preceding section. This section shall not be construed to prohibit the filing of a written report by a defendant or defendant's counsel on behalf of a defendant if such a report presents a study of his background and personality and suggests a rehabilitation program." (Italics added.)

■ The Attorney General points out: "Pursuant to section 1204, a defendant has the right to call witnesses, including himself," to testify. (See generally, *In re Anderson* (1968) 69 Cal.2d 613, 666 [73 Cal.Rptr. 21, 447 P.2d 117] [" '[S]ection 1204 . . . "requires the court in determining the consequences of guilt to receive *evidence* . . . either in mitigation or aggravation of the punishment to be imposed." ' "]; see also *People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 725 [135 Cal.Rptr. 392, 557 P.2d 976]; *In re Cortez* (1971) 6 Cal.3d 78, 88 [98 Cal.Rptr. 307, 490 P.2d 819].) By stating in section 1204 that mitigating evidence must be presented through "the testimony of witnesses examined in open court" rather than verbal representations, the Legislature has declared that a criminal defendant wishing to make an oral statement to the court in mitigation of punishment must do so through testimony given under oath.[6] (A defendant may also provide an unsworn written statement either by submitting the statement to the probation officer for inclusion in the probation report (Cal. Rules of Court, rule 4.411.5(a)(4)), if one is prepared; or by including such a statement in a "written report" filed by the defense that "presents a study of his background and personality and suggests a rehabilitation program" (§ 1204).)

Defendant, on the other hand, argues: "Requiring sworn testimony and cross-examination . . . would burden non-capital cases with an added penalty-phase-like trial, when in most instances the defendant simply wishes

---

[6] Just as an attorney representing a criminal defendant may ask for a lenient sentence without giving sworn testimony, a defendant who has chosen self-representation may make such an argument without being sworn, so long as the argument is based on evidence that is before the sentencing court.

to speak briefly to the judge." Contrary to this argument, section 1204 does not give parties the right to turn sentencing hearings into trials akin to the penalty phase of a capital case. The trial court has the power to "provide for the orderly conduct of proceedings before it" (Code Civ. Proc., § 128, subd. (a)(3)), and it has great discretion to exclude evidence that would "necessitate undue consumption of time" (Evid. Code, § 352). Thus, the court may refuse to hear evidence pertaining to peripherally relevant matters that will not affect the court's exercise of its sentencing discretion, or testimony that merely restates information contained in the defendant's statements to the probation officer. (See Cal. Rules of Court, rule 4.411.5(a)(4) [probation report must include "[a]ny statement made by the defendant to the probation officer, or a summary thereof, including the defendant's account of the circumstances of the crime"].) And a trial court that prefers to proceed more informally may, *with the parties' consent*, choose not to have the defendant testify under oath and instead allow the defendant to make a brief unsworn statement urging lesser punishment.

■ In any event, whether a defendant's personal mitigating statement at sentencing should be made under oath and subject to cross-examination by the prosecutor is a matter of policy not for this court but for the Legislature. That body is entrusted with the task of enacting the laws for our state, and, in performing that responsibility, considers the reasons or the need for a particular statute. Our task is limited to interpreting the Legislature's enactments, and we have done so here.

■ Defendant notes that in *People v. Robbins* (1988) 45 Cal.3d 867 [248 Cal.Rptr. 172, 755 P.2d 355], this court stated that "[i]n the noncapital sentencing context, a defendant does not generally have an opportunity to testify as to what penalty he feels is appropriate." (At p. 889.) But "[a]n appellate decision is not authority for everything said in the court's opinion but only 'for the points actually involved and actually decided.' " (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620 [71 Cal.Rptr.2d 830, 951 P.2d 399].) At issue in *Robbins* was the right of a defendant in a *death penalty case* to make a statement in mitigation. Capital cases are governed by a sentencing scheme unique to those cases (see generally §§ 190.1, 190.2, 190.3, 190.4), and this court in *Robbins* was construing that particular sentencing scheme. By contrast, this case involves a sentencing statute applicable to criminal cases generally.

■ Defendant argues that the federal Constitution entitles a defendant in a criminal case to make a personal statement in mitigation of punishment. Although he mentions the Constitution's Fifth, Sixth and Fourteenth

Amendments, he does not explain why the Fifth or Sixth Amendments might be pertinent to his claim, and focuses instead on the Fourteenth Amendment's right to due process of law. It is unclear whether, in this argument, he claims to have a right under the federal Constitution to make an *unsworn* personal statement *without being subject to cross-examination*. If that is defendant's argument, we reject it. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " (*Mathews v. Eldridge* (1976) 424 U.S. 319, 333 [47 L.Ed.2d 18, 96 S.Ct. 893].) California law, through section 1204, gives a criminal defendant the right at sentencing to make a *sworn* personal statement in mitigation that is *subject to cross-examination* by the prosecution. This affords the defendant a meaningful opportunity to be heard and thus does not violate any of the defendant's rights under the federal Constitution.

We now consider whether, on the facts of this case, the trial court erred in not allowing defendant to testify in mitigation of punishment. We agree with the Attorney General that it did not. Just before pronouncing sentence, the trial court inquired, "With that, the matter's submitted, correct?" Defense counsel replied, "Submitted." Defense counsel made no attempt to call defendant to testify, and defendant himself did not ask to do so. Under these circumstances, there was a forfeiture of defendant's right to testify in mitigation of punishment. We need not decide here whether the right to testify in mitigation of punishment is a right that is personal to defendant (see *People v. Robles* (1970) 2 Cal.3d 205 [85 Cal.Rptr. 166, 466 P.2d 710] [defendant has the right to testify at trial over his attorney's objection]) or whether it is a decision that may be made by defense counsel, because neither made a timely request that defendant be allowed to testify.

It was only after the trial court had denied probation and was in the process of sentencing defendant to prison that defendant asked, "Can I speak, your honor?" Assuming for the sake of argument that this may be construed as a request to testify in mitigation of punishment, it came too late; it should have been made before the court started to pronounce defendant's sentence. (*State v. Rankins* (1999) 133 N.C.App. 607, 614 [515 S.E.2d 748] [trial court properly denied the defendant's request to address the court after sentence had been imposed because "it was too late in the proceedings to inform the court of mitigating factors relevant to sentencing . . ."]; see also *People v. Earley* (2004) 122 Cal.App.4th 542, 546 [18 Cal.Rptr.3d 694] [trial court did not abuse discretion in denying a defendant's request to testify at trial, made after the defense had rested but before the jury was instructed].)

## DISPOSITION

We affirm the judgment of the Court of Appeal.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.