Filed 5/4/23 P. v. Castrillo CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH ELIAS CASTRILLO,<br><br>Defendant and Appellant. | F084863<br><br>(Merced Super. Ct. No. 15CR00224A)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County. Ronald W. Hansen, Judge. (Retired Judge of the Merced Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Poochigian, Acting P. J., Smith, J. and Snauffer, J.

# INTRODUCTION

Appellant and defendant Joseph Elias Castrillo (appellant) called for a taxicab, sat in the backseat, did not have enough money to pay the fare, and killed the taxi driver by shooting him three times in the back of the head. Appellant was convicted of first degree murder (Pen. Code, § 187)[1] with an enhancement pursuant to section 12022.53, subdivision (d), that he personally and intentionally discharged a firearm and proximately caused great bodily injury or death in the commission of the offense. He was sentenced to an aggregate term of 50 years to life, based on 25 years to life for murder and a consecutive term of 25 years to life for the enhancement.

In his first appeal, this court affirmed his conviction and the firearm enhancement, but remanded the matter for the trial court to consider whether to dismiss the enhancement based on statutory amendments that were enacted after his sentencing hearing. On remand, the trial court declined to dismiss the enhancement.

Appellant filed a second appeal, and argued remand was again required because the court did not realize it also had discretion to impose a lesser term for the firearm enhancement based on the California Supreme Court's ruling in *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*). This court agreed remand was required under *Tirado*. At the second hearing on remand, the trial court declined to impose a lesser term for the firearm enhancement.

In this third appeal, appellant argues the matter must be remanded for another sentencing hearing because the trial court should have ordered a supplemental and updated probation report before it denied his motion to impose a lesser term for the firearm enhancement. We decline to remand and affirm.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

# FACTS[2]

On the night of January 4 through 5, 2015, appellant and Dante Woods called a taxi company to request a ride. Dean Barker, a taxi driver for the company, responded to the call. Appellant and Woods did not have enough money to cover the fare. Upon reaching the destination, appellant, who was sitting in the back seat directly behind the driver, produced a gun, hit Barker in the face with the gun, and then fired three shots into the back of Barker's head. Appellant and Woods fled and left Barker's body in the driver's seat of the taxi, with his foot pressed against the brake.

A telephone number was found on Barker's clipboard in the cab, and an investigation led to appellant and Woods. Appellant denied being in a taxicab that night and said he had nothing to do with the killing. Woods admitted he was in the taxicab with appellant, and said appellant shot Barker. Other associates of appellant and Woods reported that appellant admitted he shot the cab driver. Woods pleaded guilty to voluntary manslaughter for a sentence of 11 years in exchange for his truthful testimony as to what happened on the night of the homicide.

## PROCEDURAL BACKGROUND

**Charges and Conviction**

Appellant was charged and tried for murder, with the special allegation that he personally and intentionally discharged a firearm which proximately caused death (§ 12022.53, subds. (d), (e)(1)).

On August 31, 2017, a jury convicted appellant of first degree murder, and found true the section 12022.53, subdivision (d) firearm enhancement.

---

[2] The factual and procedural backgrounds are from this court's records and the nonpublished opinions in *People v. Castrillo* (Nov. 14, 2019, F076693) (*Castrillo I*), appellant's first appeal, and *People v. Castrillo* (Apr. 26, 2022, F083077) (*Castrillo II*), appellant's second appeal. Both parties have cited to these records and opinions in their appellate briefs, and we take judicial notice of these records. (See Evid. Code, §§ 450, 452, subd. (d), 459.)

**Probation Report and Sentencing**

On November 1, 2017, a probation report was filed that summarized the facts of the case, appellant's prior juvenile record and personal background, and that he was statutorily ineligible for probation.

Appellant submitted a letter to the court that was attached to the probation report and wrote he "held onto my innocence" and had been convicted by a "corrupt system" that did not "seek truth." Appellant offered his apologies to the Barker family but added that they did not receive "proper justice" because "someone had to pay." Appellant wrote the district attorney used lies, manipulation, and coaching to get Dante Woods to "fabricate" a story. Appellant stated he was a victim, and he would be separated from his daughter and family because the system went to "great lengths to see me stripped of my freedom."

On November 1, 2017, the trial court sentenced appellant to 25 years to life for first degree murder (§ 190, subd. (a)), plus a consecutive term of 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)).

As relevant to appellant's contentions, section 12022.53 establishes a three-tiered system for firearm enhancements: subdivision (b) provides for a 10-year enhancement for the personal use of a firearm; subdivision (c) provides for a 20-year enhancement for the personal and intentional discharge of a firearm; and subdivision (d) provides for a 25-year-to-life enhancement for the personal and intentional discharge of a firearm causing great bodily injury or death. (*Tirado, supra,* 12 Cal.5th at p. 695.)

At the time of appellant's sentencing hearing, "section 12022.53 prohibited courts from striking its enhancements.… Thus, if a section 12022.53 enhancement was alleged and found true, its imposition was mandatory." (*Tirado, supra,* 12 Cal.5th at p. 695.)

**Appellant's First Appeal**

On November 14, 2019, this court filed the nonpublished opinion that rejected appellant's contentions of prosecutorial misconduct and instructional error and affirmed his murder conviction and the firearm enhancement. (*Castrillo I*, *supra*, F076693.)

We held remand was required for the court to hold a youthful offender parole hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*). Also on remand, we directed the court to determine whether to exercise its discretion to strike the section 12022.53, subdivision (d) firearm enhancement, based on amendments enacted after the sentencing hearing by Senate Bill No. 620 (2017–2018 Reg. Sess. (Senate Bill 620)). "Section 12022.53(h) now provides that a 'court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section.' " (*Tirado, supra*, 12 Cal.5th at p. 696.)

## THE FIRST HEARING ON REMAND

**Appellant's Sentencing Brief**

On May 27, 2021, Mr. Coughlin, who had represented appellant at his jury trial, filed a sentencing brief and exhibits relevant to a future youth offender parole hearing under *Franklin*, in anticipation of the sentencing hearing on remand.

The brief summarized appellant's interview with a social worker about his childhood and youth – that his father had been in prison, he mostly lived with his mother, a couple of her boyfriends were abusive, his mother smoked methamphetamine and was incarcerated, and his grandmother later cared for him. Appellant had behavioral issues in elementary school and got into fights, this behavior continued in high school, and he started hanging out with gang members. Appellant started seeing a therapist and talked about how he saw his mother get physically abused by boyfriends, and that his mother and her boyfriend physically abused him. Appellant's brief surmised he had "apparently never been diagnosed" but it was "easy to conclude" he suffered from posttraumatic

stress disorder because of these incidents. Appellant's brief further stated that his first contact with law enforcement was when he was 11 years old, and his second occurred when he was 14 years old and under the influence of cocaine, marijuana, and alcohol. Appellant started using drugs when he was 13 to 14 years old and continued until through his arrest and sentencing.

Appellant's brief also addressed his life in prison after being incarcerated for the murder conviction:

> "Until recently, [appellant] had been an active gang member but is now non-active. [Appellant] says that his decision to leave the gang has caused some friction in his family as some of his family are still active. He is working as a religious clerk at the High Desert State Prison where he is currently incarcerated. He participated in a drug program at Solano Prison but admits he did not complete the program as of now because he is not 'ready'. He has completed the ARC (Anti-Recidivism Coalition) Program which took approximately 3 months.
>
> "[Appellant] does have goals and aspirations he hopes to complete while he is incarcerated. He hopes to continue with his education and hopefully begin taking trade courses so if he is eventually released he will be able to get a job." (*Castrillo II*, *supra*, F083077.)

Appellant's brief concluded:

> "[Appellant] is doing what he can while he is incarcerated to rehabilitate himself with the assistance of the programs that are currently available to him and will be available to him while he is incarcerated at CDCR. [Appellant] had turned 18 years of age two months before the tragic events that have landed him where he is now. [T]he adolescent and young adult brain is not fully developed and [appellant] will have ample opportunity in the coming years to show that he can and is willing to change so that someday he will be granted parole and become a productive member of society and have a meaningful relationship with his daughter who is currently 5 years old. [¶] … [¶] No one can predict the future but it is hoped that when the time comes for [appellant] to be eligible for parole that he will have changed and matured to be an adult who the Board will see as someone who has taken advantage of the education and rehabilitation opportunities that are and will be available to him." (*Castrillo II*, *supra*, F083077.)

Appellant's brief did not request preparation of a supplemental probation report for the hearing on remand.

**First Hearing on Remand**

On May 28, 2021, Judge Hansen, who presided at appellant's jury trial, held the hearing on remand. Appellant was present and represented by Mr. Coughlin.

The court stated it received appellant's brief and the information relevant to a future youthful offender parole hearing. Mr. Coughlin stated he also had a letter from appellant's mother, and the court accepted it. Mr. Coughlin did not request the court to order a supplemental probation report.

The court addressed the section 12022.53, subdivision (d) firearm enhancement, and acknowledged the statute had been amended so that it now had discretion to either impose the term of 25 years to life or dismiss the enhancement. The court stated it previously imposed the enhancement because the crime was egregious.

The court addressed appellant and asked if he had matured, and appellant said yes. The court said appellant appeared to be sincere, although it could not know if his statements were motivated by his desire to obtain an early parole hearing. The court invited arguments from the parties on what was a fair enhancement in the case.

The prosecutor argued the court should not dismiss the enhancement because appellant committed "a cold blooded execution of a completely innocent, unsuspecting victim," he fired three gunshots into the back of the victim's head, the victim never had a chance to defend himself, and the trial evidence show he later laughed about it.[3]

The court agreed with the prosecutor that the crime was senseless, appellant shot the victim in the back of the head, and it was "outraged" by the facts. The court stated there was no question appellant was impulsive, immature, and stupid, and "[n]ow we're

---

[3] At trial, Woods testified that after the killing, he went with appellant to a friend's house. The friend asked them what happened. Woods testified defendant said he "shot someone" and seemed to brag about it.

years later and he appears to be a different person. So what's a fair sentence in this case?"

Mr. Coughlin argued appellant was 18 years old at the time of the offense and asked the court to impose the lesser enhancement of 10 years based on section 12022.53, subdivision (b), for the personal use of a firearm in the commission of a violent felony. The prosecutor replied that the court did not have discretion to impose a lesser enhancement under a different subdivision that was not found true by the jury.

The court stated it only had discretion to either impose the subdivision (d) enhancement or strike it, and it did not have discretion to reduce it to a lesser enhancement. The court continued:

> "But now we come where the law's changed and I am granted discretion. And I think I am required to consider not only his youthfulness, but also whether he's demonstrated any change, which he indicates he has. [¶] And the other factor is that [the] 25 [years] to life firearm enhancement is double punishment for the same conduct. That's the other issue is that the murder was an execution by a firearm. He gets 25 to life for that. Now it's the same conduct, which imposes a second 25 to life. There was good reason for these firearms enhancements. I don't think they deterred the number of gun sales. They haven't deterred the number of shootings. [¶] You know, I thought about this a lot."

Appellant addressed the court and stated:

> "Since I've been at CDC, I have remained Rider free for quite some time. Now I have become a religious clerk there at the prison. I'm no longer a part of any gang or organization. I do not function under any type of manner. I do remain focused on going ahead and tackling whatever task it is to go ahead and be released later in the future. [¶] And basically I'm not a child anymore. I have grown up. *And since day one, I have plead [sic] my innocence and still today I hold onto my innocence.* I do understand the way his life was taken. It was something serious. But today that isn't me.

And that wasn't me then.  Yeah.  I was young, *but I still hold onto my innocence*."[4]  (Italics added.)

The court stated it would not exercise its discretion to strike the firearm enhancement of 25 years to life but added "that I think it is double punishment for the same conduct."  Mr. Coughlin agreed it was double punishment and urged the court to strike the enhancement because appellant was 18 years old when he committed the offense, and the court should consider his age and lack of maturity.

The court again denied appellant's motion to strike the firearm enhancement:

"You know, this is a very difficult case.  It wasn't difficult at the time of the original sentencing.  It's very difficult now.  [¶]  But, you know, after considering everything, I'm going to maintain – I decline to exercise discretion to strike the firearm[] enhancement.  But I will add a comment that I think this was a youthful, impulsive offense, and that in my observation [appellant] has appeared to mature and exercise a change.  And I'm going to ask that a copy of this transcript along with those comments be placed [as] part of his record for his future parole hearing."

**Tirado**

In 2022, after the first hearing on remand, the California Supreme Court in *Tirado* addressed a split in the appellate courts regarding whether a trial court has the discretion to impose a lesser *uncharged* section 12022.53 enhancement.  *Tirado* held:  "When an accusatory pleading alleges and the jury finds true the facts supporting a section 12022.53(d) enhancement, and the court determines that the section 12022.53(d) enhancement should be struck or dismissed under section 12022.53(h), the court may, under section 12022.53(j), impose an enhancement under section 12022.53(b) or (c)." (*Tirado, supra*, 12 Cal.5th at p. 700, fn. omitted.)  *Tirado* explained that an allegation that the "defendant 'did personally and intentionally discharge a firearm which proximately caused great bodily injury or death to another person, not an accomplice … within the

---

[4] Appellant's statements at the hearing on remand are similar to his letter to the sentencing court – that he held "onto my innocence" and had been convicted by a "corrupt system" that did not "seek truth."

meaning of … section 12022.53(d)' " would also "refer[] to facts necessary to prove allegations under section 12022.53(b) and (c) as well. Firing a gun as alleged would meet the use requirement of section 12022.53(b) and the discharge element of section 12022.53(c)." (*Ibid.*)

**Second Appeal**

Appellant filed an appeal from the trial court's denial of his motion to dismiss the firearm enhancement at the first hearing on remand. He argued the matter should again be remanded for another sentencing hearing because the court erroneously believed it was limited to an "all-or-nothing" choice to either strike or impose the enhancement of 25 years to life under section 12022.53, subdivision (d), but *Tirado* held the trial court had discretion under section 1385 to impose a "lesser-included" firearm enhancement.

On April 26, 2022, this court filed the nonpublished opinion in his second appeal and agreed that another remand was required based on *Tirado.*

> " 'Relief from a trial court's misunderstanding of its sentencing discretion is available on direct appeal when such misapprehension is affirmatively demonstrated by the record.' [Citation.] The record in this case affirmatively demonstrates such misapprehension. At the sentencing hearing on remand, appellant expressly asked the court to impose the 10-year enhancement under section 12022.53, subdivision (b), instead of having to decide whether to impose or strike subdivision (d)'s enhancement of 25 years to life. The court rejected appellant's argument and agreed with the prosecutor that it lacked such discretion. Moreover, the court's statements at the hearing reflect that it might have considered imposing the subdivision (b) enhancement, but felt it was limited to decide whether to impose or strike the subdivision (d) enhancement of 25 years to life.
>
> "As a result of the court's statements, we cannot conclude that remand would be futile. We are thus compelled to remand the matter again for the court to decide whether to exercise its discretion pursuant to section 1385 as to the section 12022.53, subdivision (d) enhancement of 25 years to life, as set forth in *Tirado.* In doing so, we express no opinion as to the outcome of any further proceedings." (*Castrillo II, supra,* F083077.)

10.

## SECOND HEARING ON REMAND

The instant appeal is from the court's ruling at the second hearing on remand. Appellant was again represented by Mr. Coughlin.

**Sentencing Brief**

On July 22, 2022, Mr. Coughlin filed a sentencing brief that stated the historical facts of the case were well known to the court and the parties, and he would "rely on the court record and the court's recollection of the facts of the case" at the hearing on remand. Counsel did not request a supplemental or updated probation report.

Mr. Coughlin noted the court struggled with its decision at the prior hearing on remand, and erroneously believed it only had the options of imposing or dismissing the term of 25 years to life for the section 12022.53, subdivision (d) enhancement. Counsel argued the court now had a third option based on the decision in *Tirado* – to exercise its discretion and impose a lesser term of 10 years under subdivision (b), or 20 years under subdivision (c), for the section 12022.53 firearm enhancement. Counsel argued a lesser term was more appropriate since appellant was 18 years old when he committed the offense.

**Second Hearing on Remand**

On July 27, 2022, Judge Hansen conducted the second hearing on remand. Appellant appeared by teleconference, and Mr. Coughlin was in the courtroom.

The court stated it read Mr. Coughlin's brief, acknowledged it had discretion to impose a lesser term for the firearm enhancement under *Tirado*, and recalled the facts of the case: "I'm still outraged by the nature of this crime, the execution of a gentleman who was merely providing a service and a strong family background and it was just a senseless killing and so I always – every time this case comes back … it brings back the outrage of the nature of the crime, but I still have to balance it to try and determine what is a just sentence."

The prosecutor summarized the facts of the crime and argued appellant "executed" the victim and committed a "brutal, senseless killing of a completely innocent, unsuspecting person." The prosecutor acknowledged appellant was 18 years old at the time, but the crime was "about as coldblooded a killing as one can imagine." The prosecutor further noted that at the most recent hearing, appellant "was still arguing that he was innocent, that he had been falsely accused. I just find that his plea for mercy on the basis that he has somehow been rehabilitated is insincere, given the fact that he's never taken accountability for what he did."[5]

The prosecutor stated that the victim's son was present and wanted to address the court. The court agreed, and Mr. Barker's son described his family's pain after his father was murdered, that they would never recover, and he believed appellant had planned the crime because he hit his father and then fired three shots into his head. The family never received a letter from appellant that said he was sorry for what happened, and appellant's sentence should not be reduced.

The court acknowledged the changes in sentencing laws, and that appellant was 18 years old and may have been immature and impulsive when he committed the crime but described the murder as an outrageous and unfair "execution … of an unsuspecting man who had his back to [appellant]."

Appellant interrupted and asked to speak. The court addressed appellant and stated it could not get past the facts of the case. "I think, well, okay, if I take the 20 years level [on the enhancement], you know, it's still a long time. But the facts haven't changed and I know because of the outrageous nature of this crime, the taking of a good

---

[5] As explained above, appellant's letter to the sentencing court stated that he was holding onto his innocence. At the May 28, 2021, hearing on remand, appellant addressed the court, said he had changed, but that "*since day one, I have plead [sic] my innocence and still I hold onto my innocence.* I do understand the way his life was taken. It was something serious. But today that isn't me. And that wasn't me then. Yeah. I was young, *but I still hold onto my innocence*." (Italics added.)

12.

man's life, I decline to stay the firearms enhancement. I decline to impose the 10-year sentence of use of a firearm. I decline to impose the 20-year sentence for a personal use and discharge of a firearm. I think the appropriate sentence because of the nature of the crime is the second 25 [years] to life, and the sentence will stand as previously imposed."

On August 29, 2022, appellant filed a notice of appeal from the court's ruling at the second hearing on remand.

## DISCUSSION

Appellant contends that at the second hearing on remand in 2022, the trial court abused its discretion by failing to order an updated supplemental probation report prior to deciding whether to impose a lesser enhancement and failing to allow appellant to personally address the court. Appellant complains that the original presentence report was filed in 2017, prior to the initial sentencing hearing after his conviction. Appellant argues a supplemental report would have updated the court on his progress in prison since the first sentencing hearing and included any other mitigating information.

Appellant further argues a supplemental report was required by California Rules of Court, rule 4.411(a)(2) since a significant period of time had passed since the original report was prepared. Appellant asserts he had "nothing to lose by waiting for a fresh investigation and supplemental probation report" with current information about his status that would have been relevant for the court's sentencing decision.

Appellant argues the court's failure to order a supplemental probation report was prejudicial under *People v. Watson* (1956) 46 Cal.2d 818, and the matter must be remanded for another sentencing hearing for the court to exercise its discretion after reviewing an updated supplemental probation report. Appellant asserts it is reasonably probable that if a supplemental report had been prepared, the court would have "overcome its fixation on the egregious conduct underlying the conviction" if it had been aware "of new mitigating circumstances."

13.

**Supplemental Presentence Investigative Reports**

California Rules of Court, rule 4.411(a) addresses presentence investigative reports and states: "When required [¶] As provided in subdivision (b), the court must refer the case to the probation officer for: [¶] (1) A presentence investigation and report if the defendant: [¶] (A) Is statutorily eligible for probation or a term of imprisonment in county jail under section 1170(h); or [¶] (B) Is not eligible for probation but a report is needed to assist the court with other sentencing issues, including the determination of the proper amount of restitution fine; [¶] (2) A supplemental report if a significant period of time has passed since the original report was prepared." (Cal. Rules of Court, rule 4.411(a).) Rule 4.411(b) allows the parties to stipulate to the waiver of the report.

"[A] probation report is not necessarily required if defendant is statutorily ineligible for probation …." (*People v. Dobbins* (2005) 127 Cal.App.4th 176, 180.) In such cases, the court has discretion to decide whether a probation report should be provided. (*People v. Bullock* (1994) 26 Cal.App.4th 985, 989.) "If a report is not required for such defendants upon original sentencing, we see no basis for holding that a report is required for resentencing after remand, assuming the defendant remains ineligible for probation…. [¶] That is not to say a probation report may not be helpful to a court on resentencing." (*Ibid.*) "There may be compelling reasons for ordering a probation report even when the defendant is ineligible for probation. The defendant's postconviction behavior and other possible developments remain relevant to the trial court's consideration upon resentencing. Still, in many cases obtaining a new report will be a meaningless exercise. The trial court is in the best position to evaluate the need for an updated report, with the input of counsel." (*Id.* at p. 990.)

"[I]t is well settled that when a case is remanded for resentencing after an appeal, the defendant is entitled to 'all the normal rights and procedures available at his original sentencing' [citations], including consideration of any pertinent circumstances which have arisen since the prior sentence was imposed [citation]." (*Dix v. Superior*

*Court* (1991) 53 Cal.3d 442, 460.) At a resentencing hearing on a section 12022.53 enhancement, the court may consider evidence of the defendant's "postsentencing conduct in prison" in deciding whether to exercise its discretion to dismiss or reduce the enhancement. (*People v. Yanaga* (2020) 58 Cal.App.5th 619, 627–628.)

**Analysis**

Appellant acknowledges he was ineligible for probation but argues a probation report was prepared for his initial sentencing hearing in 2017, and the court should have ordered a supplemental and updated report for the second hearing on remand in 2022. The People assert appellant's failure to specifically request a supplemental report, or object to its absence at the 2021 and 2022 hearings on remand, constituted forfeiture of the issue on appeal.

"Where … a defendant is ineligible for probation, such omissions [in failing to request a supplemental report] result in waiver of a supplemental report in the trial court and forfeiture of the right to object to the absence of such a report on appeal. [Citations.] This is so even where, for instance, the issue before the sentencing court was whether to exercise discretion to dismiss" an enhancement or modify a sentence. (*People v. Franco* (2014) 232 Cal.App.4th 831, 834.)

"[A] timely objection to the absence of a supplemental report would have permitted the court to explain why none was necessary." (*People v. Johnson* (1999) 70 Cal.App.4th 1429, 1433.) " 'A defendant should not be allowed to stand silent when the court proceeds without a supplemental probation report, gamble that a trial court will impose a lesser term of imprisonment and then urge reversal for the failure to obtain the report without being required to make some showing that he was prejudiced thereby.' " (*Ibid*.)

That is what happened in this case. The record suggests the court may have believed a supplemental report was not necessary, and defense counsel did not request one, because the court had already been made aware of information relating to appellant's

15.

postconviction conduct. Prior to the first hearing on remand in 2021, appellant's counsel filed a brief to address issues related to a future youthful offender parole hearing, consistent with this court's remand order. As set forth above, appellant's brief also addressed his postconviction behavior in prison – that he was no longer an active gang member, he was working as a religious clerk in prison, he completed a three-month program for anti-recidivism, admitted he failed to complete a prison drug program because he was not "ready," and he hoped to continue his education and take trade courses to prepare for his possible release. Appellant's brief concluded that he was willing take advantage of education and rehabilitation opportunities in prison "to show that he can and is willing to change so that someday he will be granted parole and become a productive member of society and have a meaningful relationship with his daughter who is currently 5 years old."

At that same 2021 hearing, appellant addressed the court and stated he was more mature and had grown up, and the court acknowledged that he appeared to be sincere. Appellant stated he had become a religious clerk, he was no longer in a gang, and he was focused on whatever was required to be released in the future. However, appellant also stated that he had pleaded his innocence "since day one" and "still today I hold onto my innocence," repeating the same claims he made in his letter to the sentencing court in 2017.

In 2022, just a little over one year later, the court scheduled the second hearing on remand to consider whether to impose a lesser term for the firearm enhancement. Appellant's counsel, who had ably represented him since trial, filed a brief with the court that acknowledged the court and parties were well aware of the historical facts of the case, and he would "rely on the court record and the court's recollection of the facts of the case." Appellant's attorney argued a lesser term was appropriate because appellant was 18 years old at the time of the offense and did not include any new information about appellant's postconviction behavior or request a supplemental probation report. At the

16.

hearing, counsel again focused on appellant's age in arguing a lesser enhancement was appropriate. The prosecutor reminded the court that at the prior hearing, appellant was still insisting he was innocent.

Appellant complains that the court prevented him from speaking during the 2022 hearing on remand. "[A] criminal defendant wishing to make an oral statement to the court in mitigation of punishment must do so through testimony given under oath." (*People v. Evans* (2008) 44 Cal.4th 590, 598, fn. omitted.) "[A] trial court that prefers to proceed more informally may, *with the parties' consent*, choose not to have the defendant testify under oath and instead allow the defendant to make a brief unsworn statement urging lesser punishment." (*Id*. at p. 599.) Appellant was represented by counsel at the hearing, and counsel did not advise the court that appellant wanted to make a statement, request to provide updated information about appellant's status in prison, or object when the court issued its ruling

Finally, appellant complains the court abused its discretion when it denied his motion to impose a lesser term for the firearm enhancement because it improperly focused only on the aggravating circumstances about the murder "as if there had been no opportunity for favorable intervening developments and in-prison behavior in those (almost) five years," the court only cited appellant's age as a mitigating circumstance, it did not allow appellant to speak, and it did not allow consideration of any new information.

We review a trial court's ruling on a motion to dismiss or reduce a firearm enhancement for abuse of discretion. (*People v. Pearson* (2019) 38 Cal.App.5th 112, 116.) In reviewing for abuse of discretion, we are guided by the principle that defendants are entitled to sentencing decisions made by a court exercising informed discretion. (*Tirado, supra*, 12 Cal.5th at p. 694.)

The court was well aware that it had discretion to impose a lesser term for the firearm enhancement pursuant to *Tirado*. As appellant's counsel acknowledged, the

court was familiar with the history of the case since it had presided over the jury trial and the prior resentencing hearing. Counsel's primary argument to impose a lesser enhancement was based upon appellant's age when he committed the offense. The court was also aware of appellant's postconviction behavior based upon counsel's trial brief and appellant's own statements made at the 2021 hearing, and appellant's counsel did not advise the court of any new information for purposes of the 2022 hearing.

In denying appellant's motion, the court again concluded the serious and egregious circumstances of appellant's commission of the first degree murder warranted imposition of the full term of 25 years to life for the firearm enhancement, and it did not abuse its discretion when it declined to impose a lesser term.

## DISPOSITION

The judgment is affirmed.