Filed 8/17/23  In re A.M. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re A.M., A Person Coming Under the Juvenile Court Law. | 2d Juv. No. B324392 (Super. Ct. No. 21JV00072) (Santa Barbara County) |
| SANTA BARBARA DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. F.N., Defendant and Appellant. | |

F.N. (mother) appeals the juvenile court's orders terminating her parental rights to her minor child, A.M.  (Welf. & Inst. Code, § 366.26.)[1]  She contends she had a due process right

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

to testify at the section 366.26 hearing and that the court erred by proceeding in her absence. Mother forfeited this claim, however, by failing to appear at the duly noticed section 366.26 hearing and asserting her right to testify.

Mother also asserts that the juvenile court and Santa Barbara County Child Welfare Services (CWS) failed to comply with their duties of inquiry under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; ICWA) and related California law. Mother specifically challenges their failure to ask the maternal grandfather and certain paternal extended family members whether A.M. is or may be an Indian child. (See § 224.2, subd. (b).)

In response to our request for supplemental briefing,[2] mother now concedes that CWS did not have an expanded duty of initial inquiry under ICWA because A.M. was taken into protective custody pursuant to a warrant under section 340, subdivision (b). (See *In re Robert F.* (2023) 90 Cal.App.5th 492, 500-502; *In re Ja.O.* (2023) 91 Cal.App.5th 672, 677-680.) We conclude that mother's claim fails notwithstanding her concession. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In December 2020, CWS received a referral claiming that mother and P.M. (father) were homeless and were leaving four-year-old A.M. unsupervised while they used drugs. CWS provided drug treatment services for both parents, but when

---

[2] We requested that mother's counsel address in supplemental briefing "the effect, if any, of *In re Robert F.* (2023) 90 Cal.App.5th 492, on the argument that the respondent agency was required to inquire with extended family members about A.M.s 'Indian status' as part of its duty of initial inquiry. . . ."

2

father failed to consistently participate, CWS obtained a protective custody warrant, detained A.M. and filed a juvenile dependency petition alleging parents' failure to protect A.M. (§ 300, subd. (b)(1)) and mother's abuse of a sibling (*id.*, subd. (j)) because mother previously had lost her parental rights to A.M.'s older half-sibling.

*Detention Hearing*

At the initial detention hearing, the juvenile court found that A.M. came within the provisions of section 300 and placed the child with mother.

CWS subsequently amended the dependency petition to add a count under section 300, subdivision (g) -- no provision for support -- given that father's location was unknown. CWS recommended that A.M. be declared a dependent and remain in mother's care with family maintenance services.

*Jurisdiction/Disposition Hearings*

At the jurisdiction and disposition hearing, CWS reported that because mother had recently admitted to using drugs while caring for A.M., and had tested positive for methamphetamine, CWS intended to seek a warrant to remove A.M. from mother's custody and requested a continuance. The juvenile court granted the continuance. CWS obtained the warrant, removed A.M. from mother's custody and filed a second amended petition.

On April 29, 2021, the juvenile court sustained the petition, and at the May 2021 disposition hearing ordered mother to participate in reunification services. The father was located and appeared in October 2021, was determined to be a presumed father and was also ordered to participate in reunification services.

3

*12-Month Review*

At the 12-month review hearing, CWS reported father's whereabouts were unknown, and mother was not consistently participating in drug testing and treatment or engaging in medical or mental health care. On CWS' recommendation the juvenile court terminated services for both parents and set a section 366.26 hearing.

*Section 366.26 Hearings*

Neither parent appeared at the initial section 366.26 hearing on August 18, 2022. Mother's counsel stated that mother "was supposed to be here," and that mother had "assured" counsel she would attend via Zoom. Counsel stated that mother wished to set a contested hearing and confirmed she would give notice to her client. CWS requested that mother file an offer of proof.

In her offer of proof, mother claimed she could prove the existence of a beneficial parent-child relationship under section 366.26, subdivision (c)(1)(B)(i). Mother planned to testify regarding the nature of her visits with A.M. to establish that relationship.

Mother appeared via Zoom at the continued section 366.26 hearing on September 13, 2022. The juvenile court denied her counsel's request to be relieved as mother's counsel based on a "breakdown in communication." The court set a pretrial conference for September 22, 2022 and ordered the mother to appear. The mother did not appear at the pretrial conference. Trial was set for September 29, 2022.

On the trial date, Mother was not present when the case was called. CWS submitted its evidence and rested subject to rebuttal. Mother's counsel told the juvenile court that she informed her client of the date and time of the trial and mother

4

was "very well aware that it was at 10:00. . . .  She knew of the importance of the court date."  Counsel stated without mother "I essentially don't have a case to go forward."  Counsel then rested without presenting any evidence or argument.  The court found by clear and convincing evidence that it is likely that A.M. will be adopted and terminated all parental rights.

Sometime after the juvenile court ruled and concluded the hearing and after the assigned social worker had left the courthouse, the mother appeared via Zoom and the court recalled the matter.  Mother's counsel informed the court that she had explained the court's ruling to mother and had advised mother of her appellate rights.  Counsel did not ask to reopen the case to offer mother's testimony or to argue that any exception to termination applied.  Counsel stated:  "[M]y position is still the same. . . .  I'm still resting."  The court then advised mother of her "right to appeal."

FACTS RELEVANT TO ICWA

At the initial hearing in March 2021, mother signed an ICWA-020 form indicating there was no indication A.M. was an Indian[3] child.  In response to CWS' and the juvenile court's inquiries, mother denied Native American ancestry and reported she did not believe the alleged father had any Native American ancestry.  Later, the father reported to both CWS and the juvenile court he did not believe he or his child had any Native American ancestry.

Despite the child being placed with the maternal grandparents since April 2021, they were not asked regarding the

---

[3] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many."  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

child's Indian status until September 2022.  The maternal grandmother denied Indian heritage but because the maternal grandfather was not home the social worker stated she would ask the maternal grandfather "in person during her visit at the placement."  Apparently that did not happen.  The maternal aunt and uncle also denied any Indian heritage.

Although CWS had contact with the paternal grandmother, she was never asked regarding the child's Indian status before parental rights were terminated. After parental rights were terminated, CWS attempted to reach the paternal grandmother by telephone but the call could not be completed and the line disconnected. [4]  The paternal grandmother's phone did not accept text messages.  Also after parental rights were terminated, CWS contacted the  maternal grandfather who reported no Native American Ancestry.

DISCUSSION

*Mother's Right to Testify*

Mother contends the order terminating her parental rights must be reversed because she had a due process right to testify at the section 366.26 hearing.

"[A] parent has a right to 'due process' at the hearing under section 366.26 which results in the actual termination of parental rights." (*In re Jeanette V.* (1998) 68 Cal.App.4th 811, 816.) Nonetheless, "[a]n appellate court ordinarily will not consider challenges based on procedural defects or erroneous rulings where an objection could have been but was not made in the trial court.  [Citation.]  Dependency cases are not exempt from this

---

[4] In the interest of promoting the finality of the juvenile court judgment, we grant CWS's unopposed motion, filed on March 30, 2023, seeking to augment the record on appeal with updated ICWA information.

6

forfeiture doctrine.  [Citations.]  The purpose of the forfeiture rule is to encourage parties to bring errors to the attention of the juvenile court so that they may be corrected.  [Citation.] Although forfeiture is not automatic, and the appellate court has discretion to excuse a party's failure to properly raise an issue in a timely fashion [citation], in dependency proceedings, where the well-being of the child and stability of placement is of paramount importance, that discretion 'should be exercised rarely and only in cases presenting an important legal issue.'  [Citation.]" (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 754 (*Wilford J.*); *In re Marriage of Binette* (2018) 24 Cal.App.5th 1119, 1127 [failure to request to testify forfeited right]; *Mendoza v. Ramos* (2010) 182 Cal.App.4th 680, 687 [same]; see *People v. Evans* (2008) 44 Cal.4th 590, 599-600 [right to testify forfeited where defense counsel did not call defendant to testify, and defendant himself did not ask to testify].)

Here, mother failed to appear when her case was called at the section 366.26 hearing.  Mother's counsel stated she could not proceed without mother's testimony and rested her case.  Counsel did not request a continuance.

The juvenile court terminated mother's parental rights, and the social worker left the courthouse.  After being informed that mother was now present on Zoom, the court recalled the matter. Neither mother nor her counsel asserted mother's right to testify. To the contrary, counsel stated:  "[M]y position is still the same. . . . I'm still resting."

Under these circumstances, mother forfeited her right to testify by failing to raise the issue in the juvenile court.  We decline to exercise our discretion to excuse that forfeiture.  (See *Wilford J., supra*, 131 Cal.App.4th at p. 754.)

7

*ICWA*

As indicated, mother concedes CWS did not have the duty to inquire of extended family members because A.M. was detained pursuant to a warrant under section 340. (See *In re Robert F.*, *supra*, 90 Cal.App.5th at pp. 497, 500, 504; see also *In re Ja.O.*, *supra*, 91 Cal.App.5th at pp. 677-681.) However, it appears the children were not removed pursuant to section 340. The social worker applied for a protective custody warrant under both sections 306 and 340. The juvenile court issued a protective custody order "pursuant to Welfare and Institutions Code § 306 and/or § 309." The order is prepared on a form that contains a section for warrants issued pursuant to sections 306 and 309, and another for warrants issued pursuant to section 340. The box corresponding to sections 306 and 309 is checked, while the box corresponding to section 340 is left blank. Inexplicably, the warrant itself only references section 340. Despite mother's concession, on this record we choose to address her original claim that CWS and the juvenile court failed to comply with ICWA.

We generally review ICWA findings for substantial evidence. (*In re J.K.* (2022) 83 Cal.App.5th 498, 504.) "Because the material facts at issue are undisputed, "'we review independently whether ICWA requirements have been satisfied.'"" (*Ibid.*)

ICWA defines an "'Indian child'" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C.S. § 1903(4) & (8); § 224.1, subd. (a).) The juvenile court and county welfare department have an affirmative and continuing duty to inquire whether a child subject to dependency

8

proceedings is or may be an Indian child. (§ 224.2, subd. (a); Cal. Rules of Court, rules 5.481(a) & 5.668(c).)

The continuing duty to inquire whether a child is or may be an Indian child begins with the initial contact and obligates the juvenile court and the child services agency to ask the child, parents, extended family members, and others who have an interest in the child, whether the child is, or may be, an Indian child. (§ 224.2, subds. (a)-(c).)

Mother asserts CWS and the juvenile court failed to satisfy their "duty of continuing inquiry" when they failed to ask the maternal grandfather and the paternal grandparents regarding Indian heritage. However, based upon the augmented record, the maternal grandfather reported no Indian heritage and the paternal grandmother could not be reached. There is nothing in the record suggesting CWS ever had contact with or a telephone number for the paternal grandfather. We conclude that on this record there was no ICWA error because CWS eventually satisfied its duty of inquiry and there is no reason to believe or know the child is an Indian child.

DISPOSITION

The order terminating parental rights is affirmed.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

YEGAN, Acting P.J.          BALTODANO, J.

9

Gustavo Lavayan, Judge
Arthur A. Garcia, Judge
Superior Court County of Santa Barbara

_____


Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rachel Van Mullem, County Counsel, and Lisa A. Rothstein, Senior Deputy County Counsel, for Plaintiff and Respondent.